UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michael J. Bailey,

                 Plaintiff,

       vs.

County of Kittson, Kenny
Hultgren, Lou Ann Dalzell,
Steve Porter, City of Hallock,
Dale Hanson, Pennington
County, Michael Hruby,
James Van Schaick, City of
Thief River Falls, City of
Thief River Falls Chief of
Police, Gerald Hanson,
Charles Lindgren, Ryan Kezar,
Northwest Medical Center, Ellie
Wiemerslage, Mary McEnelly,
Timothy Rittenour, Marlene
Beedy, Nichole Weinen, Kathy
Mercil, Sharon Benson, Amanda
Peterson, Unknown Records
Department Personnel and
Unknown Persons,

                Defendants.        Civ. No. 07-1939 (ADM/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. <u>Introduction</u>

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Motion of Marlene Beedy, Sharon Benson, Mary McEnelly, Kathy Mercil, Northwest Medical Center ("NWMC"), Amanda Peterson, Timothy Rittenour, Nichole Weinen, Ellie Wiemerslage, and Unknown Records Department Personnel (collectively, the "Medical Defendants"), to Dismiss or, in the Alternative, for Summary Judgment; the Motion of the City of Hallock, Dale Hanson ("D. Hanson"), the City of Thief River Falls, the City of Thief River Falls Police Chief, Gerald Hanson ("G. Hanson"), Charles Lindgren ("Lindgren"), and Ryan Kezar ("Kezar")(collectively, the "City Defendants"), to Dismiss; the Motion of Kittson County,  Kenny Hultgren ("Hultgren"), Lou Ann Dalzell ("Dalzell"), Steve Porter ("Porter")(collectively, the "Kittson County Defendants"), and Pennington County, Michael Hruby ("Hruby"), and James Van Schaick ("Van Schaick")(collectively, the "Pennington County Defendants"), to Dismiss or, in the Alternative, for Summary Judgment; the Plaintiff's Motion for Default Judgment or, in the Alternative, for Summary Judgment; and the Plaintiff's Motion for Mistrial, and Motion for Sanctions.

The Plaintiff appears pro se; the Medical Defendants appear by Randall S. Hanson, Esq.; the City Defendants appear by Jon K. Iverson, and Amber S. Lee,

- 2 -

Esqs.; and the Kittson and Pennington County Defendants appear by  Roger L. Rowlette, and Jason M. Hill, Esqs.

For reasons which follow, we recommend that the Motion of the Medical Defendants to Dismiss, or for Summary Judgment, be granted; that the Motion of the City Defendants to Dismiss be granted, in part; that the Motion of the Kittson and Pennington County Defendants to Dismiss, or for Summary Judgment, be granted, in part; that the Plaintiff's Motion for Default Judgment or, Alternatively for Summary Judgment, be denied; that the Plaintiff's Motion for a Mistrial be denied; and that the Plaintiff's Motion for Sanctions be denied.[1]

## II.  Factual and Procedural Background

On December 1, 2004, the Plaintiff was arrested on a felony charge of terroristic threats, and he was held as a pretrial detainee in the Kittson County Jail (the "Jail") from December 2, 2004, until June 14, 2005.[2]  See, Complaint, Docket No. 1, at ¶3, and Exhibit F; see also, State v. Bailey, 2007 WL 1053011 at *1 (Minn. App.,

---

[1]We note that, as each of the Defendants has filed an Answer in this Matter, we construe their Motions as Motions for Judgment on the Pleadings, or in the alternative, for Summary Judgment.  See, Rule 12(c), Federal Rules of Civil Procedure.

[2]The Plaintiff alleges that although during this period he was also held at the Pennington County Jail, and the Marshal County Jail, he was in the continuous jurisdictional custody of Kittson County.  See, Complaint, Docket No. 1, at p. 2, n. 2.

- 3 -

April 10, 2007).   All of the events, which are complained of in the Plaintiff's Complaint, took place while he was a pretrial detainee.   Id.

The Plaintiff alleges that, on the morning of December 29, 2004, he was engaged in a discussion with his cell mate, Joey Arnal ("Arnal"), in which he stated that he felt that Porter and Dalzell were liars, that he "hated liars," and that, in the course of the discussion, he waived his hands about in emphasis.   Id. at ¶226; see also, Exhibit G.   Porter approached the Plaintiff and asked him what was wrong, and the Plaintiff replied "you're a f*cking liar."   Id. at ¶240.   Porter then entered the Plaintiff's cell, sat down next to the Plaintiff on his bed, and grabbed his arm.   Id. at ¶241.   The Plaintiff moved away from Porter and told him to "stay away from me," and Porter left the cell.   Id.   The Plaintiff alleges that Porter then returned to his cell and asked the Plaintiff if he needed to be taken to the "third floor," and informed the Plaintiff that he had to submit to being handcuffed or Porter would use pepper spray on him.[3] Id. at ¶¶245-46.   The Plaintiff agreed to be handcuffed, and was then taken to a chair in the lobby of the Jail, where he waited approximately forty-five (45) minutes.   Id. at ¶247.   There was a phone at the desk where the Plaintiff was seated, and the

---

[3]The Plaintiff states that Porter did not make a reference to the NWMC, and that he did not recognize Porter's statement relating to the "third floor" as a reference to the NWMC.   See, Complaint, Docket No. 1, at ¶246.

Plaintiff claims that both Porter, and Dalzell, refused his request to telephone his attorney on her toll-free number.  Id. at ¶267.  The Plaintiff was then transported to the NWMC with the assistance of D. Hanson.  Id. at ¶269 and Exhibit Q.

On admission to the NWMC, the Plaintiff asked for his glasses case, which contained his attorney's card with her telephone number and, when the admitting nurse refused to allow him to use the telephone to call his attorney, he replied "f*cking b*tch don't ask me anything then," and slid his glasses case across the floor. Id. at ¶¶279, 286.  The Plaintiff was taken to a secure cell with a pad on the floor, and Porter instructed the Plaintiff to remove his Jail clothing, and put on a hospital shirt and pants.  Id. at ¶288.  The Plaintiff refused, stating "just close the door and leave me the f*ck alone," although, when a nurse subsequently repeated the request, the Plaintiff complied, and then seated himself on the floor with his back to the wall.  Id. at ¶¶289-90.   The nurse attempted to get the Plaintiff to take oral neuroleptic medications, and he refused.  Id. at ¶290.

The NWMC staff then called for additional law enforcement, and Officers G. Hanson, Lindgren, and Kezar, from the Thief River Falls Police Department, and Deputy Van Schaick, from the Pennington County Sheriff's Department, arrived on the scene.  Id. at ¶338(e).  Porter and Van Schaick asked the Plaintiff to roll over so

that he could be injected with medications, and advised him that, if did not comply he would be tasered, and the Plaintiff replied "f*ck you, you will kill me," and stated that he had Hepatitis C, and would spit at anyone who tried to medicate him. Id. at ¶¶338(c)-(d).   Van Schaick then shot the Plaintiff with the taser, and G. Hanson, Lindgren, and Kezar, grabbed him and held him down, and the Plaintiff alleges that, while he was being held down, the cartilage in his nose was broken. Id. at ¶338(f). Two (2) NWMC staff members then gave the Plaintiff two (2) shots of neuroleptic medication, and removed the taser probes. Id. at ¶338(g).  The discharge report notes that no psychiatric symptoms were observed by the NWMC staff, while the Plaintiff was being held, and he was released from the NWMC on December 30, 2004, and returned to the Jail. Id. at Exhibit J.

The Plaintiff alleges other violations of his civil rights while he was detained at the Jail, and specifically, he claims that his medical and financial records were stored in an unsecured room, and individual records were missing when they were returned to him. Id. at ¶¶147-48.  The Plaintiff also alleges that Dalzell, Hultgren, and Porter, seized his legal materials, which prevented him from bringing a claim of discriminatory prosecution in his pending criminal Trial. Id. at ¶¶154, and 162. According to the Complaint, Dalzell, Hultgren, and Porter, required the Plaintiff to

submit all of his correspondence, including letters to his criminal defense attorney, unsealed, id. at ¶¶164-65, and he heard Dalzell read aloud from that legal correspondence. Id. at ¶38.

Finally, the Plaintiff claims that the Kittson County Defendants denied him medical treatment, while he was held as a pretrial detainee at the Jail, by refusing to transport him to appointments, in order to receive dentures and new eyeglasses, that had been scheduled prior to his arrest. Id. at ¶¶171(A), (D). The Plaintiff also alleges that he was diagnosed with Hepatitis C in 2000, and was prescribed medical treatment shortly before his arrest, and that the Kittson County Defendants refused to allow him to take those medications while he was detained at the Jail. Id. at ¶¶171(B), 172.

On April 16, 2007, the Plaintiff commenced this action, by filing a Complaint seeking relief, under Title 42 U.S.C. §1983, for alleged violations of his Federal constitutional rights. See, Docket No. 1. The Plaintiff alleges claims under the First, Fourth, Sixth, Eight, Ninth, Tenth, and Fourteenth Amendments, and also alleges a State law claim for false imprisonment.

As noted, the Medical Defendants, and the Kittson County and Pennington County Defendants, have filed Motions to Dismiss, and/or for Summary Judgment, which are supported by Affidavits and Exhibits that set forth the relevant facts of the

case, and the City Defendants have filed a Motion to Dismiss.  The Plaintiff included several Exhibits with his Complaint, and has filed a Memorandum in Response to the Defendants' Motions, see, <u>Docket No. 42</u>, but he has not submitted any Affidavits, or other evidence, in opposition to the Defendants' Motions.

However, the Plaintiff denominated his Responsive Memorandum as a "Motion for Default Judgment or Summary Judgment [and] Response to Defendants Motion to Dismiss and/or Summary Judgment."  As urged in his Memorandum, the Plaintiff contends that a Default Judgment is appropriate, as "[a]ll of the defendants, inadequately and incompletely answered the complaint."  See, <u>Docket No. 42</u>, at p. 2.  Nonetheless, the Plaintiff has failed to present any evidence that would support that assertion, as each of the Defendants has filed an Answer that satisfies the requirements of Rule 8, Federal Rules of Civil Procedure, see, <u>Docket Nos. 8, 12, and 14</u>, and has also filed a Motion to Dismiss, and/or a Motion for Summary Judgment.  See, <u>Docket Nos. 6, 17, and 22</u>.  Therefore, we deny the Plaintiff's Motion for Default Judgment, and construe his submission as a cross-Motion for Summary Judgment, and as a Responsive Memorandum to the Defendants' dispositive Motions.

Moreover, the Plaintiff's Responsive Memorandum was submitted after the deadline of October 12, 2007, that was established in our Order dated September 4,

2007.  See, <u>Docket No. 37</u>.  By letter dated November 19, 2007, see, <u>Docket No. 52</u>, the Defendants asked that we disregard the Plaintiff's submission as untimely.  We construe <u>pro se</u> pleadings liberally, however, see, <u>White v. Kautzky</u>, 494 F.3d 677, 680 n. 1 (8th Cir. 2007), citing <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972), and since the Defendants have not shown that they have been prejudiced in their ability to respond to the Plaintiff's submissions due to that modest delay, and in the interest of being fully informed, we have considered the documents that were submitted by the Plaintiff.

By Order dated January 30, 2008, see, <u>Docket No. 53</u>, we directed the Plaintiff to serve any remaining documents, that he had filed with the Court, on the Medical Defendants, and we granted the Defendants leave to file any response to those documents by no later than February 11, 2008, and we also permitted the City Defendants to file a response to the Plaintiff's Motion for Default Judgment, or for Summary Judgment, and well as to his Motion for a Mistrial, and Motion for Sanctions.  <u>Id.</u>  By letter dated February 8, 2008, the City Defendants represented that they did not wish to submit any additional briefing, and asked that the Plaintiff's Motions be denied.  See, <u>Docket No. 54</u>.

As to service on the Medical Defendants, in a letter dated February 6, 2008, see, Docket No. 56, the Plaintiff represents that he does not have the originals of his documents available to serve, but has arranged for the Clerk of Court to provide copies of those pages to the Medical Defendants. In response, the Medical Defendants filed a letter dated February 11, 2008, see, Docket No. 57, in which they confirm that they have not yet been served with those documents, and repeat their request that the Plaintiff's claims against them be dismissed. While we are sympathetic to the Medical Defendants' frustration, at not having been served with legible copies of approximately twenty-five (25) pages of the Plaintiff's filings, we find that they have been able to adequately present their arguments in this matter, and have not been unduly prejudiced by the Plaintiff's failure to serve them with copies. If, on receipt of those documents, the Medical Defendants choose to make a further record, they remain free to file a responsive Memorandum to the Court.

Finally, on November 8, 2007, the Plaintiff filed a document, which was entitled "Motion for Default Judgment or Summary Judgment [and] Response to Defendants Motion to Dismiss and/or Summary Judgment," see, Docket No. 44, which appears to be a Memorandum in response to the Reply Memorandum that was filed by the Medical Defendants. See, Docket No. 38. As he does not ask for

Summary Judgment in that submission, we construe it as a responsive Memorandum, and we deny his second Motion for Default Judgment or Summary Judgment, as moot. We note that, in that document, the Plaintiff renews his request that he be appointed counsel. However, by Order dated September 4, 2007, see, <u>Docket No. 37</u>, we determined that the appointment of counsel is not necessary in this matter, and the Plaintiff has added no new evidence, that would support his renewed Motion for counsel.

As a consequence, we recommend that his renewed Motion for appointed legal counsel be denied. In his submission of November 8, 2007, the Plaintiff also appears to seek sanctions against the Defendants, and their counsel, for allegedly falsifying facts, and making arguments in support of their various Motions in bad faith. However, the Plaintiff has filed a separate Motion for Sanctions, see, <u>Docket No. 43</u>, and we address his arguments in support of imposing sanctions on the Defendants, and their counsel, jointly as between his two (2) Motions. See, <u>Docket No. 43</u>.

### III. <u>Discussion</u>

A.   <u>The Motions of the Kittson and Pennington County Defendants, and the Medical Defendants to Dismiss, or for Summary Judgment; the City Defendants' Motion to Dismiss; and the Plaintiff's Motion for Summary Judgment</u>.

1.      Standard of Review.   "When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]."  Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.23d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).   In addition, all reasonable inferences, from the facts alleged in the Complaint, must be drawn in favor of the nonmoving party.  See, Maki v. Allete, Inc., supra at 742.  "However, the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal."  Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007),quoting DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002).

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  Id., quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Koehler

v. Brody, 483 F.3d 590, 596 (8th Cir. 2007); Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

Nevertheless, "[d]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Stringer v. St. James R-1 School District, 446 F.3d 799, 802 (8th Cir. 2006), quoting Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). Moreover, "[t]o avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." Young v. City of St. Charles, supra at 627, citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

In addition, Rule 12(c), Federal Rules of Civil Procedure, allows parties to move for a Judgment on the Pleadings, "[a]fter the pleadings are closed, but within such time as not to delay the trial." The standard upon which Rule 12(c) Motions are decided is akin to that of a Motion to Dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure. See, Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) ("[W]e review this 12(c) motion under the standard that governs 12(b)(6) motions."), citing St. Paul Ramsey County Med. Ctr. V. Pennington County, 857 F.2d 1185, 1187

(8th Cir. 1988); see also, <u>Flora v. Firepond, Inc.</u>, 260 F. Supp. 2d 780, 784 (D. Minn. 2003), aff'd, 383 F.3d 745 (8th Cir. 2004).  As a result, a "[j]udgment on the pleadings is appropriate where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law."  <u>Faibisch v. University of Minnesota</u>, 304 F.3d 797, 803 (8th Cir. 2004), citing <u>United States v. Any & All Radio Station Transmission Equip.</u>, 207 F.3d 458, 462 (8th Cir. 2000).  A disputed fact is "material," if it must inevitably be resolved, and that resolution will determine the outcome of the case.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 248; <u>Jenkins v. Southern Farm Bureau Casualty</u>, 307 F.3d 741, 744 (8th Cir. 2002)("A fact is material if its determination in favor of the non-moving party could affect the result in the case."); <u>Herring v. Canada Life Assurance</u>, 207 F.3d 1026 (8th Cir. 2000).

When making such determinations, "[w]e accept as true, all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party."  <u>Syverson v. Firepond, Inc.</u>, 383 F.3d 745, 749 (8th Cir. 2004), quoting <u>United States v. Any & All Radio Station Transmission Equip.</u>, supra at 462. However, we need not accept as true, wholly conclusory allegations, or unwarranted factual inferences.  See, <u>Hanten v. School Dist. of Riverview Gardens</u>, 183 F.3d 799, 805 (8th Cir. 1999); <u>Springdale Educ. Ass'n v. Springdale School Dist.</u>, supra at 651.

Moreover, in treating the factual allegations of a Complaint as true, the Court "do[es] not, however, blindly accept the legal conclusions drawn by the pleader from the facts." Westcott v. City of Omaha, supra at 1488, citing Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987).

With respect to the Motions for Summary Judgment, such a Motion is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations. See, Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Midwest Oilseeds, Inc. v. Limagrain Genetics Corp., 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005). Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue. See, Eide v. Grey Fox Technical Servs. Corp., 329 F.3d 600, 604 (8th Cir. 2003); Philip v. Ford Motor Co., 328 F.3d 1020, 1023 (8th Cir. 2003); United Fire & Casualty Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved, and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving party. See, Anderson

- 15 -

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Planned Parenthood of Minnesota/ South Dakota v. Rounds, 372 F.3d 969, 972 (8th Cir. 1004); Fenney v. Dakota, Minnesota & Eastern R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported Motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. In sustaining that burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavit or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Federal Rules of Civil Procedure; see also, Anderson v. Liberty Lobby, Inc., supra at 256; Eddings v. City of Hot Springs, Ark., 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, supra at 322; see also, Forest Park II v. Hadley, 408 F.3d 1052, 1057 (8th Cir. 2005); Mercer v. City of Cedar Rapids, 308 F.3d 840, 843 (8th Cir. 2002); Hammond v. Northland Counseling Center, Inc., 218 F.3d 886, 891 (8th Cir. 2000). No genuine issue of fact exists in such a case because "a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. Univ. of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

A Motion to Dismiss, or for Judgment on the Pleadings, can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court."  Rule 12(b) and (c), Federal Rules of Civil Procedure.  However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment.  See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see also, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003).

Materials necessarily embraced by the pleadings include "documents whose contents are alleged in the complaint, and whose authenticity nobody questions, but which are not physically attached to the pleading."  Fraenkel v. Messerli & Kramer,

P.A., 2004 WL 1765309 at *2 (D. Minn., July 29, 2004), quoting Kushner v. Beverly

Enters., 317 F.3d 820, 831 (8th Cir. 2003), see also, Jenisio v. Ozark Airlines, Inc.,

Ret. Plans, 187 F.3d 970, 972 n. 3 (8th Cir. 1999)("A district court may consider

documents on a motion to dismiss where * * * the plaintiff's claims are based solely

on the interpretation of the documents and the parties do not dispute the actual

contents of the documents.").

    2.    Legal Analysis. The Plaintiff seeks relief under Title 42 U.S.C. §1983,

for alleged violations of his Federal constitutional rights. We first consider the

Plaintiff's claims against the Kittson and Pennington County Defendants, then

proceed to those against the Medical Defendants, and finally, we address the claims

against the City Defendants.[4]

------

[4]In his Complaint, the Plaintiff did not specify if he brought these claims against the Defendants in their individual as well as in their official capacities. In the context of a Section 1983 claim, specific pleading of individual capacity claims is required because public officials must be put on notice that they will be exposed to personal liability. See, Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999). Where a plaintiff has failed to state whether he is suing an official in his individual capacity, our Court of Appeals has construed the claim to be against the official in his official capacity only. See, Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999); Egerdahl v. Hibbing Community College, 72 F.3d 615, 620 (8th Cir. 1995)("If a plaintiff's complaint is silent about the capacity in which she is suing the defendant, we interpret the complaint as including only official capacity claims."); Miskovich v. Indep. Sch. Dist. 318, 226 F. Supp. 2d 990, 1013 (D. Minn. 2002). As a result, for the purposes of the Defendants' Motions, we conclude that the Plaintiff has sued the Defendants in their official capacity only.

a.    The Claims Against the Kittson and Pennington County Defendants.  The Plaintiff alleges that during the course of his confinement as a pretrial detainee, the Kittson and Pennington County Defendants violated his rights under the First, Fourth, Sixth, Eighth, Ninth, Tenth, and Fourteenth Amendments.[5] The Kittson and Pennington County Defendants argue that the Plaintiff's claims should be dismissed, or subject to summary adjudication, as he has failed to state any valid constitutional claim, and they are entitled to qualified and official immunity.

1)    Qualified Immunity of Hultgren, Dalzell, and Porter. Government officials, who are performing discretionary functions, are generally shielded from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have

_____

[5]The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." United States Constitution, Amendment IX.  As noted by our Court of Appeals, the holding of Griswold v. Connecticut, 381 U.S. 479 (1965), has not been expanded by any Court to apply the Ninth Amendment to prisoner rights cases.  See, Burns v. Swenson, 430 F.2d 771, 778 (8th Cir. 1970), cert. denied, 404 U.S. 1062 (1972).  The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." United States Constitution, Amendment X.  The Plaintiff has not proffered any basis for his assertion that he was deprived of any right pursuant to the Tenth Amendment.  Thus, we recommend that the Plaintiff's claims under the Ninth, and Tenth Amendments, as to all Defendants, be dismissed.

known.  See, Wilson v. Layne, 526 U.S. 603, 609 (1999); Young v. Harrison, 284 F.3d 863, 866 (8th Cir. 2002); Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001).

"[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken."  Wilson v. Layne, supra at 614.  The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 641 (1987).  As a consequence, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'"  Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

When qualified immunity is asserted in a Section 1983 action, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *."  Jones v. Shields, 207 F.3d 491, 494 (8th Cir. 2000), quoting Wilson v. Layne, supra at 609 [citations omitted].  "Only then do we ask whether that right

was clearly established at the time of the alleged violation."  Id.; see, Coonts v. Potts, 316 F.3d 745, 750 (8th Cir. 2003), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

The Plaintiff alleges that his rights were violated by Hultgren, Dalzell, and Porter, when they allegedly seized his financial and medical records; when they unsealed and read his outgoing legal mail; when they denied him medical treatment; and when they retaliated against him.  In addition, the Plaintiff claims that Hultgren, Dalzell, Porter, and Van Schaick, violated various constitutional rights during the events that took place on December 29, 2004.

a)      The Right to Privacy in Medical and Financial Records.  In Counts I and II of the Complaint, the Plaintiff alleges that his right to privacy in his medical and financial records was violated by Dalzell, Hultgren, and Porter, when they stored those documents in an unlocked room that was accessible by prisoners, and that the seizure of those documents was unreasonable under the Fourth Amendment.  See, Complaint, supra at ¶¶145-148.

The Plaintiff first alleges that unspecified "financial records" were improperly stored or examined by Dalzell, Hultgren, and Porter, which interfered with his general right to financial privacy, in violation of the Federal Right to Financial Privacy Act, Title 12 U.S.C. §3401, et seq.  We have found no case that would suggest that a

prisoner has a constitutional right to financial privacy.[6]  Moreover, "the Right to Financial Privacy Act does not nor could it create a constitutional expectation of privacy for purposes of the Fourth Amendment." Best v. Johnson, 2004 WL 2301233 (E.D. Ark., October 8, 2004).  Therefore, the Plaintiff has failed to state a claim for a violation of his financial privacy, and this claim should be dismissed.

As to the Plaintiff's claim as to his right to privacy in his medical records, in Tokar v. Armontrout, 97 F.3d 1078, 1084 (8th Cir. 1996), our Court of Appeals rejected an inmate's argument that his constitutional right to privacy was violated when prison officials transferred him to a segregation unit that was designated for HIV positive inmates, thereby disclosing his HIV status to prison guards, and other inmates.  In reaching that conclusion, the Court explained that it had been unable to find a Supreme Court or Appellate Court case which held that prisoners have a constitutional right of confidentiality in their medical records.  Id.

Similarly, in Beers v. Stockton, 242 F.3d 373, 2000 WL 1839535 at *1 (8th Cir. 2000)(Table Decision), our Court of Appeals affirmed the denial of a prisoner's right

---

[6]Title 12 U.S.C. §3402 prohibits financial institutions from providing information concerning a customer's financial records to a "government authority" without the customer's prior authorization, and Section 3401 clarifies that a "government authority" is "any agency or department of the United States, or any officer, employee, or agent thereof." Title 12 U.S.C. §3401, Subdivision 3; see also, United States v. U.S. Bancorp, 12 F. Supp.2d 982, 984 (D. Minn. 1998).

to privacy claim when a prison nurse released the prisoner's medical records to officials at the prison to which he was being transferred, noting that such a release of information to non-medical personnel was related to legitimate penological concerns. See also, Richey v. Ferguson, 2007 WL 710129 at *23-24 (W.D. Ark., March 6, 2007)(discussing cases finding that inmates have no constitutional right to privacy in their medical records). Consequently, after considering the facts in a light most favorable to the Plaintiff, we conclude that the conduct of Hultgren, Dalzell, and Porter, did not violate a constitutional right, as the Plaintiff has alleged.

Even if we did find that pretrial detainees had a constitutional right to privacy in medical records, we cannot find that this right was clearly established in 2004, when the events alleged in the Complaint took place. In order for a right to be clearly established, "the right's contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Vaughn v. Ruoff, 253 F.3d 1124, 1129 (8th Cir. 2001), quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987), and as we have noted, we have found no case, in this Circuit, that has held that a prisoner or a pretrial detainee has such a right to privacy.

Moreover, it is well-established that an inmate's constitutional rights may be curtailed by a policy or regulation that is shown to be "reasonably related to legitimate

penological interests." <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). Here, the Kittson County Defendants have submitted a copy of the Jail Policy ("Policy"), which provides that all inmate medical and dental records are to be available to all staff for review at the beginning of each shift, to ensure that each inmate can receive proper medical treatment, see, <u>Affidavit of Jason M. Hill</u> ("Affidavit of Hill"), <u>Docket No. 29</u>, at Exhibit A, page 94, and we find that ensuring the proper treatment of the inmates, as well as the general safety of the Jail population, is a legitimate penological interest. Therefore, we recommend that the Kittson County Defendants' Motion for Summary Judgment on the Plaintiff's right to privacy claim, as to his medical records, should be granted, that the Plaintiff's Motion for Summary Judgment should be denied, and Counts I and II of the Complaint be dismissed, as to Hultgren, Dalzell, and Porter.

b)      <u>The Right to Privacy in Legal Mail</u>. In Count VI of the Complaint, the Plaintiff alleges that Dalzell, and Porter, required him to send all outgoing mail unsealed, including legal mail directed to attorneys representing him in civil matters, and his criminal defense attorney, see, <u>Complaint</u>, supra at ¶¶164-70, and in his Responsive Memorandum, he further alleges that he overheard Dalzell reading his outgoing legal mail aloud. See, <u>Docket No. 42</u>, at p. 36 n. 118.

- 24 -

Under the First Amendment, "a prisoner's constitutional right to send and receive mail may be restricted only for legitimate penological interests." Phelps v. United States Federal Government, 15 F.3d 735, 740 (8th Cir. 1994), citing Thornburgh v. Abbott, 490 U.S. 401, 407 (1989), and Bumgarner v. Bloodworth, 768 F.2d 297, 301 (8th Cir. 1985). Moreover, "[p]risoners retain their First Amendment rights of sending and receiving mail, and prison officials may not read inmates' legal mail." Foster v. Helling, 210 F.3d 378 (8th Cir. 2000), citing Thongvanh v. Thalacker, 17 F.3d 256, 258-59 (8th Cir. 1994); see also, Powells v. Minnehaha County Sheriff Dept., 198 F.3d 711, 712 (8th Cir. 1999)(inmate's claim that prison officials opened his legal mail outside his presence stated a claim under Section 1983).

The Kittson County Defendants allege that the Jail maintains a written policy regarding outgoing mail, that is available for review by inmates, and they have submitted a copy of the Policy, which contains a provision on Correspondence. See, Affidavit of Hill, supra at Exhibit A. The Policy states that "[i]nmates will be instructed that all outgoing mail of a personal nature is to be left unsealed so that it may be inspected by jail staff prior to its delivery to the U.S. Postal Service," while "[i]ncoming or outgoing mail between inmates and their attorney * * * will not be read or censored by staff," although incoming legal mail will be opened in the

presence of the inmate and inspected for contraband.  Id. at page 59.  The Kittson

County Defendants have not submitted any evidence that directly addresses the

violations of the Policy, and of the Plaintiff's constitutional rights, that are claimed by

the Plaintiff.  However, the Plaintiff has similarly not submitted any evidence, such

as an Affidavit, that would support his claim, that Dalzell, and Porter, violated his

First Amendment rights by interfering with his legal mail.

On this Record, we find that a genuine factual dispute exists, as to whether the

Plaintiff was forced to submit his legal correspondence unsealed to Dalzell, and

Porter, to be read before being mailed out.  As this claim, if true, would establish a

violation of the Plaintiff's clearly established constitutional rights, we recommend that

the Kittson County Defendants' Motion for Summary Judgment, as well as the

Plaintiff's cross-Motion for Summary Judgment, be denied as to this claim.[7]

---

[7]In addition to his claim under the First Amendment, the Plaintiff seeks to bring
his claim for interference with his legal mail pursuant to the Fourth Amendment, the
Sixth Amendment, and the Fourteenth Amendment.  As to his claim under the Fourth
and Fourteenth Amendments, the Plaintiff has not alleged that Dalzell, and Porter, or
any other Defendant, unlawfully seized his legal mail, or that it was not ultimately
delivered to its intended recipient, and therefore we find that those claims should be
dismissed.  However, the Plaintiff appears to have stated a claim under the Sixth
Amendment, as he alleges that Dalzell, and Porter, interfered with his ability to
communicate with his criminal defense attorney, and with his right of access to
Courts, and that, as a result, he suffered an injury -- namely, his inability to raise
certain defenses in his pending criminal case.  Therefore, we find that the Plaintiff's
claims in Count VI, under the Sixth Amendment, should withstand the Defendants'

c)    Access to Courts Claim. In Count III, the Plaintiff alleges that Hultgren, Dalzell, and Porter, unlawfully seized documents that related to several civil matters that he was litigating, as well as "[p]rivate and privileged communications with [his] criminal defense attorney," and that, as a result, he was prevented from bringing a claim of discriminatory prosecution at his criminal Trial. Complaint, supra at ¶154, 161-62.

In Bounds v. Smith, 430 U.S. 817 (1977), the United States Supreme Court explicitly recognized that prisoners retain a constitutional right of meaningful access to the Courts. The relevant inquiry, in determining whether prison authorities have impinged upon that right, is "whether the prisoner has been given a 'reasonably adequate opportunity' to present his claim." Martin v. Tyson, 845 F.2d 1451, 1456 (7th Cir. 1988), citing Bounds v. Smith, supra at 825. In order to prevail on an access to the Courts claim, the Plaintiff  must demonstrate some "actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996); see also, White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007); Klinger v. Dep't of Corrections, 107 F.3d 609, 617 (8th Cir. 1997)("In Lewis v. Casey, the Supreme Court held, based on principles of standing, that actual injury must be proven in order to prevail on an access-to-courts claim."). There is no

---

Motion to Dismiss.

"abstract, freestanding right" of access to legal resources or legal papers; the Plaintiff must show that he has been deprived of some specific opportunity to defend himself, or advance a viable legal claim, in some particular action. Lewis v. Casey, supra at 351; White v. Kautzky, supra at 680; Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996). He must also identify some specific injury that arose from that lost opportunity. Id.

Here, the Plaintiff has not alleged any specific injury due to being deprived of access to documents relating to his pending civil law suits. However, he claims that because Hultgren, Dalzell, and Porter, seized his legal materials, including correspondence with his criminal defense attorney, he was prevented from bringing a claim of discriminatory prosecution at his criminal Trial, and therefore, he will not be able to bring that claim on appeal. Id. at ¶¶30, 162-63. Consequently, the Plaintiff has stated a denial of access to Courts claim, and the Kittson County Defendants have not offered any competent evidence, or argument, that would challenge that assertion, and therefore, their Motion to dismiss that claim should be denied. We also recommend that the Plaintiff's Motion for Summary Judgment on the same issue be denied, as he has not introduced any evidence to support the claims in his Complaint, and the factual issues are genuinely conflicted.

Based on the same facts as those that form the basis for his access to the Courts claim, in Count IV, the Plaintiff also alleges that the Hultgren, Dalzell, and Porter, violated his right to redress grievances under the First Amendment and, in Count V, that their conduct constituted a violation of Due Process. "Conduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." Cody v. Weber, 256 F.3d 764, 771 (8th Cir. 2001), citing Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990). "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." Lewis v. Jacks, 486 F.3d 1025, 1029 (8th Cir. 2007), citing Dixon v. Brown, 38 F.3d 379, 379 (8th Cir. 1994). The Plaintiff alleges that, when he complained about the seizure of his legal materials, Porter "threatened physical violence, placement in an isolation cell and loss of privileges," Complaint, supra at ¶152, however, in general, "mere verbal threats made by a state-actor do not constitute a Section 1983 claim." Hopson v. Fredrickson, 961 F.2d 1374, 1378 (8th Cir. 1992).

The Plaintiff has not alleged that he was ever denied access to the grievance system, and so he has failed to allege a retaliation claim under the First Amendment. See, McDowell v. Jones, 990 F.2d 433, 434 (8th Cir. 1993)(No violation of

constitutional rights based on harassment by prison staff where prisoner failed to allege that he was denied access to grievance procedure).  The Plaintiff similarly fails to allege that he was actually punished by any of the Kittson County Defendants, without notice and an opportunity to be heard, see, <u>Bell v. Wolfish</u>, 441 U.S. 520, 535-36 (1979), in violation of his right to Due Process.  Thus, we recommend that the Kittson County Defendants' Motion to Dismiss Count III of the Complaint should be denied, and their Motion to Dismiss Counts IV and V should be granted.

d)    <u>The Denial of Medical Treatment</u>. In Counts VII, VIII, and IX, the Plaintiff alleges that Hultgren, Dalzell, and Porter, denied him medical treatment, while he was a pretrial detainee at the Jail, by refusing to take him to a scheduled appointment to obtain new eyeglasses, and a dental appointment to obtain dentures, and by depriving him of prescribed treatment for Hepatitis C.

Since the Plaintiff was a pretrial detainee, at the time of the alleged violations, we construe his claim relating to a denial of medical treatment under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment.  See, <u>Bell v. Wolfish</u>, supra at 535 n. 16; accord, <u>Butler v. Fletcher</u>, 465 F.3d 340 (8th Cir. 2006); <u>Owens v. Scott County Jail</u>, 328 F.3d 1026, 1027 (8th Cir. 2003). "Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection

as that afforded convicted prisoners under the Eighth Amendment."  Owens v. Scott County Jail, supra at 1027, quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983).  "[D]eliberate indifference is the appropriate standard of culpability for all claims that prison officials failed to provide pretrial detainees with adequate food, clothing, shelter, medical care, and reasonable safety."  Butler v. Fletcher, supra at 345.

To prevail on a claim of constitutionally inadequate medical care, an inmate must "demonstrate (1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." Dulaney v. Carnahan, 132 F.3d 1234, 1239 (8th Cir. 1997), citing Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997); Crow v. Montgomery, 403 F.3d 598, 602 (8th Cir. 2005); Pagels v. Morrison, 335 F.3d 736, 740 (8th Cir. 2003); Tlamka v. Serrell, 244 F.3d 628, 633 (8th Cir. 2001).  "As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment." Dulaney v. Carnahan, supra, citing Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).  "An objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a 'layperson would easily recognize the necessity for a doctor's attention.'"  Jones v. Minnesota Dept. of Corrections, ---

F.3d ---, 2008 WL 80576 at *3 (D. Minn., January 9, 2008), citing <u>Coleman v. Rahija</u>, supra at 784, quoting in turn, <u>Camberos v. Branstad</u>, 73 F.3d 174, 176 (8th Cir. 1995).

"Deliberate indifference may be manifested by * * * prison officials in intentionally denying or delaying access to medical care or intentionally interfering with prescribed treatment." <u>Meloy v. Bachmeier</u>, 302 F.3d 845, 848 (8th Cir. 2002). However, "[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." <u>Jolly v. Knudsen</u>, 205 F.3d 1094, 1096 (8th Cir. 2000), quoting <u>Estate of Rosenburg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1995); see also, <u>Smith v. Clarke</u>, 458 F.3d 720, 724 (8th Cir. 2006); <u>Roberson v. Bradshaw</u>, 198 F.3d 645, 647 (8th Cir. 1999)("'Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation.'"), quoting <u>Dulany v. Carnahan</u>, supra at 1239.

In Count VIII, the Plaintiff alleges that Hultgren, Dalzell, and Porter, were deliberately indifferent to his medical needs, when they delayed his treatment by refusing to take him from the Jail in order to attend a previously-scheduled appointment to obtain replacement eyeglasses. See, <u>Complaint</u>, supra at ¶171(a). According to the Plaintiff, as a result of the Defendants' actions, while at the Jail, he

was forced to wear eyeglasses that were "pitted and scratched," which damaged his eyesight and caused painful headaches.  Id.

It is well-settled that "[t]he objective portion of the deliberate indifference standard requires a showing of 'verifying medical evidence' that * * * delays adversely affected [the plaintiff's] prognosis, given the type of injury in [the] case." Dulany v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997), quoting Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997); see also, Senty-Haugen v. Goodno, 462 F.3d 876, 890 (8th Cir. 2006); Coleman v. Rahija, supra at 785; Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995); see also, Jolly v. Badgett, 144 F.3d 573, 573 (8th Cir. 1998)(Summary Judgment granted when prisoner failed to show prison officials were aware that delay in administering medications could result in physical harm); Crowley v. Hedgepeth, supra at 501 ("[W]hen the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment.").

Although in their Memorandum, the Kittson County Defendants allege that the Plaintiff received replacement glasses, see, Docket No. 28, at p. 18, they have not submitted any evidence that would rebut the Plaintiff's claim, and therefore, we consider the merits of the claim as plead.  At the pleading stage, the Plaintiff is not

required to prove that his condition was aggravated by the delay in prescribed treatment, but need only allege such aggravation. The Plaintiffs claims that his eyesight was damaged as a result of not being allowed to obtain new eyeglasses, and that, as a result, he suffers from "serious and painful headaches." See, Complaint, supra at ¶171(A). It takes little effort to infer that the Plaintiff has alleged an aggravation of his condition, as a result of the delay.

With respect to the subjective prong of the analysis, "[i]ntentional delay in providing medical treatment shows deliberate disregard if a reasonable person would know that the inmate requires medical attention or the actions of the officers are so dangerous that a knowledge of the risk may be presumed." Gordon ex rel. Gordon v. Frank, 454 F.3d 858, 862 (8th Cir. 2006); see also, Olson v. Bloomberg, 339 F.3d 730, 738 (8th Cir. 2003). "A reasonable officer would know that it is unlawful for officers to delay medical treatment for an inmate with obvious signs of medical distress, especially one who communicates this distress directly to officers." Gordon ex rel. Gordon v. Frank, supra at 863.

Here, the Plaintiff has submitted an appointment slip, which he alleges he provided to the Kittson County Defendants, which showed that he had scheduled an appointment for replacement eyeglasses for December 8, 2004, see, Complaint, supra

- 34 -

at Exhibit B, and he alleges that he asked them to transport him to that appointment, but that they refused.  See, <u>Complaint</u>, supra at ¶171(A).  In addition, the Plaintiff has alleged that Hultgren, Dalzell, and Porter, knew of his condition, and knew of his suffering, but intentionally delayed his access to treatment.  Therefore, in the context of a Motion to Dismiss, we conclude that the Plaintiff has sufficiently pled a Fourteenth Amendment claim against Hultgren, Dalzell, and Porter, based upon a delay in medical treatment, and their Motion to Dismiss Count VIII should be denied.

The Plaintiff also alleges that he was denied dental treatment, by the refusal of Hultgren, Dalzell, and Porter, to take him to an appointment so as to be fitted for dentures, and that he was denied medical treatment, when the Defendants denied him access to prescribed medical care for his Hepatitis C.

As to his claim that Hultren, Dalzell, and Porter, refused to allow him to see a dentist to obtain dentures, we understand the Plaintiff's claim to be that he lacked teeth with which he could chew food, and that his lack of teeth created an objectively serious medical need, which resulted in difficulty eating, painful cuts and burns to his mouth, and damage to his digestive tract.  The Defendants argue that the Plaintiff's only obvious dental need was a difficulty consuming hard foodstuffs, but they have not submitted any evidence, in the form of an Affidavit or other documentation, that

the Plaintiff did not suffer the serious injuries that he alleges, or that those injuries would not have been apparent to a reasonable observer.  See, <u>Pool v. Sebastian County, Ark.</u>, 418 F.3d 934, 944 (8th Cir. 2005)("A serious medical need is 'one that is so obvious that even a layperson would easily recognize the need for a doctor's attention.'"), quoting <u>Johnson v. Busby</u>, 953 F.2d 349, 351 (8th Cir. 1991).

Instead, construing the pleadings in the light most favorable to the Plaintiff, we find that he has sufficiently alleged a lack of a substantial number of teeth, and suffered pain, and considerable physical harm, as a result of that medical condition. In addition, the Plaintiff clearly alleges that the medically-indicated treatment for his condition would be providing dentures, and that he was denied that treatment, see, <u>Maddox v. Davis</u>, 164 Fed.Appx. 559, 561 (8th Cir. 2005), and we have no evidence that would contradict his allegation.  While the Plaintiff may not ultimately prevail on his claim that he merited dental treatment, the Defendants have not submitted any evidence to refute his claimed denial of treatment, and therefore, we limit our consideration to the merits of his pleadings.  See, <u>Cooper v. Schriro</u>, 189 F.3d 781, 783-84 (8th Cir. 1999)(reversing dismissal of a Section 1983 action when the claimant alleged that he had filed a medical services request for dental treatment for decaying teeth).  Likewise, the Plaintiff has not submitted any evidence that would support his

claim for Summary Judgment.  Thus, the Kittson County Defendants' Motion to Dismiss Count IX should be denied, and the Plaintiff's Motion for Summary Judgment on that claim should likewise be denied.

Finally, the Plaintiff claims that Hultgren, Dalzell, and Porter, deliberately denied him prescribed treatment for Hepatitis C, and that, as a consequence, he suffered permanent damage to his liver.  See, Complaint, supra at ¶171(b).  As with his claim for denial of dental care, our initial inquiry is whether the Plaintiff suffered from an objectively serious medical need, and whether the Kittson County Defendants knew about that need, but deliberately disregarded it.  See, Jolly v. Knudson, supra at 1096.  In support of his claim, that he was entitled to receive treatment for Hepatitis C while he was in Jail, the Plaintiff has submitted a letter from the Altru Clinic, which is dated August 17, 2004, that states that he had been diagnosed with Hepatitis of a mixed type, and that, as a result, he would be treated "with a combination of pegylated

Interferon [peginterferon][8] and Ribavirin[9] for a full year." Complaint, supra at Exhibit D.

The letter also informs the Plaintiff that a prescription for those medications was enclosed, and directs that, after he receives those medications from his pharmacy, he should contact his physician for an appointment regarding the administration of those medications, and schedule "followup labs as well as office visits that will be necessary." Id. Therefore, according to the Plaintiff, at the time that he was admitted to the Jail as a pretrial detainee, he had started treatment with both peginterferon, which he took as an injection, and Ribavirin, which was administered in tablet form. Id. at ¶174. Moreover, when the Plaintiff was initially booked at the Jail, he had both peginterferon, and Ribavirin, in his possession. See, Affidavit of Hill, supra at Exhibit C, page (4).

The Plaintiff claims that the Kittson County Defendants were willing to allow him to take the Ribavirin, but not the injected peginterferon, and that, since those

---

[8]Peginterferon is "indicated for use alone or in combination with * * * ribavirin * * * for the treatment of chronic hepatitis C in patients with compensated liver disease." Physician's Desk Reference, p. 2995 (62nd ed. 2008).

[9]Ribavirin is "indicated in combination with * * * peginterferon * * * Injection for the treatment of chronic hepatitis C in patients with compensated liver disease." Physician's Desk Reference, p. 3018 (62nd ed. 2008).

drugs are only effective when taken in combination, the Defendants deliberately disregarded a serious medical need when they denied him access to a necessary, prescribed medical treatment.  See,  Complaint, supra at ¶174-75, 179.

The Kittson County Defendants argue that, on December 2, 2004, which was the day that the Plaintiff was booked into the Jail as a pretrial detainee, Dalzell telephoned the office of the Plaintiff's physician at the Altru Clinic -- Dr. Chu -- and spoke with a nurse who stated that she had received a request for the Plaintiff's medical records from his defense attorney, Loretta Hillier ("Hillier").  See, Affidavit of Hill, supra at Exhibit H.  Dalzell asked that Hillier telephone the Jail to provide information about the Plaintiff's medical problems and, later that day, Hillier called and stated that the Plaintiff should not be given his Hepatitis C medication, as the Plaintiff had "lied" to her about having initiated treatment for his Hepatitis C, and that he needed to have additional blood work before he could begin treatment.  See, Affidavit of Hill, supra at Exhibit H.

According to Dalzell's note, Hillier also stated that the Plaintiff should not be allowed to take either of his medications, as they needed to be taken together, and asserted that the Plaintiff would not be starting his medications "until he is out of jail." Id.  Dalzell noted that, as a result of the information that she received from Hillier, the

Plaintiff would not be receiving any Hepatitis C medication at that time, and that Hillier spoke with the Plaintiff on the telephone to explain why he would not be receiving his medications.  Id.

Twelve (12) days later, on December 14, 2004, Hillier sent a facsimile to the Jail that included a copy of handwritten notes from Dr. Chu's nurse, which were dated December 10, 2004, and which stated that the Plaintiff would be starting treatment, with the injectable peginterferon, and that he should be allowed to take that medication as per label instructions, and should have a followup appointment, and lab tests performed, in one (1) month.  Id. at Exhibit I.   The note stated that the Plaintiff also needed a second set of Hepatitis A and B shots.   Id.   According to a Memorandum dated December 20, 2004, Hillier telephoned the Jail and left a message for Dalzell, in which she stated that the Plaintiff's physician had "changed his mind," and wanted to see the Plaintiff before his treatment could begin.  Id. at Exhibit J. Hillier related that the Plaintiff had a doctor's appointment at the Altru Clinic on January 12, 2005, and that a letter, which would confirm that appointment, would be mailed to the Plaintiff on or around December 29, 2004.  Id.

The Kittson County Defendants have not submitted any evidence that would establish that the Plaintiff was seen, in fact, by a physician on January 12, 2005, but

according to Jail records, on January 18, 2005, the Plaintiff was transported to Kittson Memorial Healthcare Center, where he was seen by Dr. Roland Larter for complaints of sores and blood in his nose, as well as swelling in his feet, and varicose veins. Id. at Exhibit K. At the conclusion of that examination, the Plaintiff apparently asked for another appointment, but the reason for that request was not recorded. Id.

A letter dated March 2, 2005, from Dalzell to Alan Rogalla, who apparently is the Chief Prosecutor from the Pennington County Attorney's office, affirms that, since his arrest, the Plaintiff was seen once by Dr. Jason Nupdal, and once by Dr. Larter, and that, on March 4, 2005, the Plaintiff had an appointment to see Dr. Nupdal about swelling in his legs. Id. at Exhibit L. Dr. Nupdal's treatment notes, from the visit on March 4, 2005, record that the Plaintiff complained of swelling in his legs and shortness of breath, and that separate laboratory tests showed that his liver enzymes were stable. Id. at Exhibit M. The Plaintiff was discharged with a prescription for a nasal spray, and was advised to exercise. Id.

While Hepatitis C is undoubtedly a serious medical problem, the issue before us is not whether the infection itself is a "serious medical need," but whether the Plaintiff had a serious medical need for Hepatitis C medications while he was housed at the Jail, and whether the Kittson County Defendants were aware of that need, and

yet denied him access to that treatment.  See, <u>Bender v. Regier</u>, 385 F.3d 1133, 1137 (8th Cir. 2004).  As a threshold matter, we note that the Kittson County Defendants telephoned the office of the Plaintiff's physician on the day after he was booked into the Jail, and were told that Hillier had the Plaintiff's medical records, and that, when Hillier telephoned later that day, she stated that the Plaintiff was not authorized to take either of his Hepatitis C medications.

However, on December 14, 2004, Hillier forwarded a note from the Plaintiff's medical providers that stated that the Plaintiff was to begin his treatment with peginterferon, and Ribavirin, as prescribed.  A conflicting message was apparently received by the Kittson County Defendants on December 20, 2004, when Hillier left a telephone message advising that the Plaintiff's physician had "changed his mind" concerning the Plaintiff's medical treatment, and that the Plaintiff was scheduled for a physician's appointment regarding his Hepatitis C medications in January of 2005.

The Plaintiff claims that he was not allowed to take his prescribed Hepatitis C medications at any time during his stay at the Jail.  The Kittson County Defendants have submitted a chart of the medications that were administered to the Plaintiff, but the records submitted begin in March of 2005, and do not contain any reference to either of the Plaintiff's Hepatitis C medications.  See, <u>Affidavit of Hill</u>, supra at

Exhibit N.   Booking Sheets, which have been submitted by the Kittson County Defendants, reveal that when the Plaintiff was initially booked into the Jail on December 2, 2004, he stated that he was taking medications for Hepatitis C, see, id. at Exhibit C at page (3), while, on subsequent Booking Sheets from February 16, 2005, June 13, 2005, and July 11, 2005, the Plaintiff is reported as not taking any medications.  Id. at Exhibit E, F, and G.  Although the Plaintiff concedes that he was transported to appointments with Drs. Nupdal and Larter, for treatment of non-Hepatitis C related complaints, the Kittson County Defendants have also failed to refute the Plaintiff's claim that he was not allowed to see a physician concerning his Hepatitis C during his detention at the Jail.

"[I]ntentionally interfering with * * * treatment once prescribed" is a violation of the Eight Amendment, Estelle v. Gamble, 429 U.S. 97, 104-05 (1976), and "[p]rison officials cannot substitute their judgment for a medical professional's opinion." Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002), citing Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000).  On this Record, we find that a genuine dispute of material fact remains as to whether the Plaintiff had been directed by his physician to begin taking the peginterferon and Ribavirin, and whether the Kittson County Defendants deliberately disregarded the treatment plan set forth by the

Plaintiff's physician.  A reasonable person could conclude, following the receipt of the message of December 14, 2004, that the Plaintiff's treating physician had directed that the Plaintiff be immediately allowed to begin taking peginterferon, and Ribavirin. However, that authorization was apparently withdrawn on December 20, 2004, and the Record does not establish whether the Plaintiff ever had a physician's appointment that resulted in an authorization to begin taking peginterferon and Ribavirin.

While we find that Summary Judgment is not appropriate for the Defendants, we also find that the Plaintiff's Motion for Summary Judgment should be denied. Notably, the Plaintiff has not submitted any evidence that would establish that he saw his physician, in January of 2005, and that, as a result of that examination, his physician instructed the Kittson County Defendants that the Plaintiff should be allowed to begin his regimen of peginterferon and Ribavirin, and even if the Kittson County Defendants did fail to provide the Plaintiff with prescribed treatment during the period between December 14, 2004, and December 20, 2004, the Plaintiff has not shown that the alleged failure was more than mere negligence, or that he suffered any harm as a result of that failure.  See, <u>Popoalii v. Correctional Medical Services</u>, 512 F.3d 488, 499 (8th Cir. 2008), citing <u>Estate of Rosenberg v. Crandell</u>, supra at 37.

To the contrary, the medical records, that have been submitted by the Kittson County Defendants, show that the Plaintiff was seen by physicians at least twice during his detention at the Jail, and on neither occasion did he ask about receiving treatment for Hepatitis C.  In fact, the records from Dr. Nupdal's examination of the Plaintiff, in March of 2005, note that, although the Plaintiff had been diagnosed with Hepatitis C, his liver enzymes were stable, and the remainder of his blood work was negative for abnormalities, which suggests either that he was receiving treatment for Hepatitis C, or that his condition was not sufficiently serious to merit treatment with prescription drugs.  In sum, we find that a genuine dispute of material fact exists as to the objective seriousness of the Plaintiff's need for treatment for Hepatitis C, during his detention at the Jail, and we recommend that Summary Judgment on that issue be denied.[10]

e)   The Events of December 29, 2004.  As we have related, the Plaintiff was taken by the Kittson County Defendants to the NWMC on December 29, 2004, where he was admitted, shot with a taser gun, and given

---

[10]The Plaintiff also alleges that Allan Rogalla ("Rogalla"), who apparently is the Chief Prosecutor from the Pennington County Attorney's office, violated his Fourteenth Amendment rights by denying him medical treatment for Hepatitis C.  See, Complaint, Docket No. 1, at ¶57, 188.  However, Rogalla is not named as a Defendant in this action, and consequently, the Plaintiff's claims, as to Rogalla, are not actionable on this Record.

neuroleptic medications.  The Plaintiff alleges that, as a result of this incident, the Kittson County Defendants violated his constitutional rights by retaliating against him, by denying him due process, the right to counsel, and access to courts, and by using excessive force.

In Counts XI and XIV, the Plaintiff alleges that the decision of the Kittson County Defendants to transfer him to the NWMC was in retaliation for his exercising his First Amendment Right to free speech.  See, <u>Complaint</u>, supra at ¶¶199-273; 282-92.  Specifically, the Plaintiff alleges that Porter deliberately provoked him to anger, and then provided false information on his Application for Emergency Hospitalization of the Plaintiff, see, <u>id.</u> at Exhibit F, when he stated that he believed that the Plaintiff was in imminent danger of harming himself if he were not restrained.

It is settled law that pretrial detainees do not automatically forfeit all of their constitutionally protected freedoms upon entering a correctional facility.  See, <u>Bell v. Wolfish</u>, supra at 545; <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974).  At the same time, "'[t]he fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration,'" <u>Hamilton v. Schriro</u>, 74 F.3d 1545, 1550 (8th Cir. 1996), cert. denied, 519 U.S. 874 (1996), quoting <u>Jones v. North Carolina Prisoners' Labor</u>

Union, Inc., 433 U.S. 119, 125 (1977), and a prison inmate retains only those First Amendment rights which are not inconsistent with his status as a prisoner.  See, Jones v. North Carolina Prisoner's Labor Union, Inc., supra at 125.

The administration of a prison "requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government" which, even in the context of a constitutional challenge, raises "separation of powers concerns [that] counsel a policy of judicial restraint."  Turner v. Safley, 482 U.S. 78, 84-85 (1987).  Thus, "[w]hen a prison regulation restricts a prisoner's constitutional rights, it is valid if it is 'reasonably related to legitimate penological interests.'"  Murphy v. Mo. Dept. of Corr., 372 F.3d 979, 982 (8th Cir. 2004), quoting Turner v. Safely,  supra at 89; see also, Pell v. Procunier, supra at 822 ("[C]hallenges to prison restrictions that are asserted to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system, to whose custody and care the prisoner has been committed in accordance with due process of law.").

When an inmate claims that prison officials have interfered with his constitutional right to free speech, the Court must apply a "'reasonableness test,'" which is "'less restrictive than that ordinarily applied to alleged infringements of

fundamental constitutional rights.'"   Hamilton v. Schriro, supra at 1550, quoting

O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987).   Prison officials need not

show that they have chosen the least restrictive means of furthering a compelling

governmental interest; they must only show that they have chosen a "reasonable"

means of furthering a "'legitimate penological interest.'"   Id., quoting Turner v.

Safely, supra at 89; see also, Jolly v. Coughlin, 76 F.3d 468, 475 (2d Cir. 1996)

("[T]he O'Lone 'reasonableness' test continues to have validity for claims brought

directly under the First Amendment.").   "The burden, moreover, is not on the

[Government] to prove the validity of prison regulations but on the prisoner to

disprove it."   Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

"[M]aintaining institutional security and preserving internal order and discipline

are essential goals that may require limitation or retraction of the retained

constitutional rights of both convicted prisoners and pretrial detainees."   Bell v.

Wolfish, supra at 546.   In this case, the Kittson County Defendants have submitted the

Jail Policy, which mandates that inmates not be permitted to "express profanity or

obscenity directed at another nor make disrespectful remarks against the character of

another person, insult or direct insults to another person, or make efforts to intimidate

anyone with remarks that have a disturbing implication."   Affidavit of Hill, supra at

Exhibit A, page 46.  In addition, it is a violation of the Jail Policy to "create a disturbance by yelling, banging utensils, using obscenities or in any other manner create loud disturbing noises."  Id.

The Plaintiff claims that, on December 29, 2004, he was engaged in a heated discussion with his cell mate, Arnal, about alleged lies that Porter had made about him, and that, when Porter came to his cell to ask what was wrong, he stated "you're a f*cking liar."  According to the Deputy's Report, see, Complaint, supra at Exhibit G, Porter asked the Plaintiff to calm down, and informed him if he would not calm down, he would be taken to the "third floor."  Id. at ¶¶242, 246.  When the Plaintiff persisted in his yelling, Porter attempted to handcuff the Plaintiff and, although the Plaintiff initially resisted, Porter was eventually able to place him in handcuffs, and remove him from the cell.  Id.; see also, Exhibits O, P, and Q.[11]  Porter then brought the Plaintiff to the booking room of the Jail, where he was held, in handcuffs, until transportation could be arranged to transport him to the NWMC.

---

[11]The Plaintiff argues that the Kittson County Defendants have falsified their reports, and that, in fact, his cell mate Arnal was banging on the walls, and creating a disturbance.  See, Complaint, Docket No. 1, at ¶¶206, 214.  However, the Report submitted by the Plaintiff records disruptive behavior by Arnal that took place on December 28, 2004, and not on December 29, 2004, which is the date on which the Plaintiff was taken to the NWMC.  Id. at Exhibit N.  Moreover, the Plaintiff acknowledges that on December 29, 2004, he was yelling, gesturing wildly, and using obscenities, which are all prohibited behaviors under the Jail Policy.

On the Record presented, we find that the Plaintiff was not engaged in the exercise of a constitutional right when he violated Jail Policy by yelling, using obscenities, and waving his arms around in a heated discussion. The Policy is reasonably related to the legitimate penological need to maintain order among the inmates, and avoid potentially inflammatory situations. As the Plaintiff's actions were not constitutionally protected, the actions of the Kittson County Defendants cannot be considered retaliatory, and Summary Judgment, in the Defendants' favor, is appropriate on Counts XI and XIV.

In Count XIII, the Plaintiff alleges that he was entitled to a Hearing before being transferred to a mental health facility by the Kittson County Defendants. Id. at ¶¶201, 205. The Plaintiff concedes that he was brought to the NWMC, by the Kittson County Defendants, pursuant to Minnesota Statutes Section 253B.05,[12] which permits

---

[12]Minnesota Statutes Section 253B.05 provides that "a peace * * * officer may take a person into custody and transport the person to a licensed physician or treatment facility if the officer has reason to believe, either through direct observation of the person's behavior, or upon reliable information of the person's recent behavior and knowledge of the person's past behavior or psychiatric treatment, that the person is mentally ill * * * and in danger of injuring self or others if not immediately detained." Minnesota Statutes Section 253B.05(a). Section 253B.05(a) further provides that the committing officer "shall make written application for admission of the person to the treatment facility [which] shall contain the peace * * * officer's statement specifying the reasons for and circumstances under which the person was taken into custody." Minnesota Statutes Section 253B.05(a).

emergency civil commitment, for a limited period, without prior notice or a Hearing,

see, Plaintiff's Response to Defendants' Motion, supra at p. 13, but alleges that the

Kittson County Defendants did not comply with Section 253B.05 when they brought

him to the NWMC.   However, the requirements of the State of Minnesota are

irrelevant, here, as "a violation of state law, without more, does not state a claim under

the Federal Constitution or [Section] 1983." Collins v. Bellinghausen, supra at 597,

quoting Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993).

The Plaintiff does not allege that Minnesota Statutes Section 253B.05 is

unconstitutional, and therefore, the relevant inquiry is whether a reasonable law

enforcement officer could have believed that the emergency commitment of the

Plaintiff was lawful, in light of clearly established law, and the information the

Kittson County Defendants possessed.  See, Kennedy v. LeFebvre, 847 F.2d 482, 483

(8th Cir. 1988)("The standard to be applied to determine whether an appellant is

entitled to qualified immunity 'is the objective (albeit fact-specific) question whether

a reasonable officer could have believed [appellants' emergency police hold] to be

lawful, in light of clearly established law and the information the [officer executing

the hold] possessed.'"), quoting Anderson v. Creighton, supra at 641.

The facts, viewed most favorably to the Plaintiff, support the conclusion that, on December 29, 2004, the Plaintiff was observed by several employees of the Jail standing in his cell, yelling loudly, using obscenities, and gesturing with his hands. When Porter approached the Plaintiff, and asked him what was wrong, the Plaintiff responded with obscenities, and eventually calmed down sufficiently to be handcuffed, and transported to the booking room, and subsequently, to the NWMC. While the Record is not entirely clear, the disturbance created by the Plaintiff appears to have lasted less than an hour.  While the Plaintiff claims, and Porter's reports confirm, that the Plaintiff had not had any prior behavioral incidents while at the Jail, which would make his behavior on December 29, 2004, seem more remarkable, the facts before us are sufficiently ambiguous that a reasonable Jury could also conclude that a law enforcement officer, who was in Porter's position, would have determined that the Plaintiff was in violation of the Jail Policy prohibiting disturbances, and imposed discipline accordingly, rather than having determined that the Plaintiff was in danger of harming himself or someone else.  As a genuine factual dispute exists, concerning the Plaintiff's procedural due process claim, we recommend that the Kittson County Defendants' Motion for Summary Judgment as to Count XIII be denied.

- 52 -

In Count XII, the Plaintiff alleges that he had a right to counsel before he was subjected to emergency commitment proceedings, and that the Kittson County Defendants wrongfully prevented him from placing a telephone call, to his attorney, before he was transferred to the NWMC, and again prior to being admitted to the NWMC.   Id. at ¶¶274-81; see also, ¶¶231, 248. The Plaintiff has not alleged a deprivation of a constitutional right pursuant to the Sixth Amendment, as "[t]he protections provided by the Sixth Amendment are explicitly confined to criminal proceedings," Austin v. United States, 509 U.S. 602 (1993), and attach "at or after the time that judicial proceedings have been initiated * * * whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."   Fellers v. United States, 540 U.S. 519, 523 (2004)(citation omitted); see also, Scarberry v. State of Iowa, 430 F.3d 956 (8th Cir. 2005)(noting that the Sixth Amendment right to counsel is "offense-specific" and "does not attach until a prosecution is commenced"). Since the Kittson County Defendants were initiating emergency civil commitment, no criminal charges were being filed, and the Plaintiff had no right to counsel under the Sixth Amendment.

Finally, in Count X, the Plaintiff alleges that Van Schaick used unreasonable force when he shot the Plaintiff with a taser gun at the NWMC, on December 29,

2004.  See, <u>Complaint</u>, supra at ¶¶188-198.  Specifically, the Plaintiff alleges that, after he was admitted to the NWMC, Van Schaick ordered the Plaintiff to roll over so that he could receive injections of medication from medical staff, and that, when he refused, Van Schaick shot him with a taser gun.  See, <u>Complaint</u>, supra at ¶197, 338.

As a pretrial detainee, the Plaintiff's unreasonable force claim is analyzed under the due process clause of the Fourteenth Amendment.[13]  See, <u>Graham v. Conner</u>, 490 U.S. 386, 395 n.10 (1989).  While the law is clear that a pretrial detainee cannot be punished, see, <u>Bell v. Wolfish</u>, supra at 535, "not every disability that is imposed during pretrial detention amounts to 'punishment' in the Constitutional sense." <u>Smith v. Copeland</u>, 87 F.3d 265, 268 (8th Cir. 1996).  "The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard," <u>Andrews v. Neer</u>, 253 F.3d 1052, 1060 (8th Cir. 2001), and the relevant inquiry is whether the law enforcement officers acted in a reasonable

---

[13]As our Court of Appeals has found that excessive force claims, which are brought by individuals who were involuntarily committed, are subject to the same analysis as pretrial detainees, we do not need to determine if the Plaintiff's status changed on his admission to the NWMC.  See, <u>Andrews v. Neer</u>, 253 F.3d 1052, 1061 (8th Cir. 2001); see also, <u>Youngberg v. Romeo</u>, 457 U.S. 307, 316-17 (1982)(analyzing rights of an involuntarily committed individual under the Due Process Clause, rather than the Eighth Amendment).

manner, in light of the facts and circumstances that confronted them.  See, Moore v. Novak, 146 F.3d 531, 535 (8th Cir. 1998)("[T]he question for the [fact finder] is whether, judging from the perspective of a reasonable officer at the scene * * * , the totality of the circumstances justifies the amount of force used."); Johnson-El v. Schloemehl, 878 F.2d 1043, 1048 (8th Cir. 1989).

"Officers are permitted to use force reasonably in a good-faith effort to maintain or restore discipline, as long as they do not use force maliciously or sadistically to cause harm."  Johnson v. Hamilton, 452 F.3d 967, 972 (8th Cir. 2006).  "In deciding whether a particular use of force was reasonable, we consider whether there was an objective need for force, the relationship between the need and the amount of force used, the threat reasonably perceived by correctional officers, the efforts by the officers to temper the severity of the forceful response, and the extent of the inmate's injuries."  Nelson v. County of Wright, 162 F.3d 986, 990 (8th Cir. 1998).

"The alleged use of excessive force is generally an issue of fact."  Duncan v. Storie, 869 F.2d 1100, 1103 (8th Cir. 1989), citing Patzner v. Burkett, 779 F.2d 1363, 1371 (8th Cir. 1985).  In Duncan v. Storie, supra, the Court denied a Motion for Summary Judgment on an excessive force claim when the plaintiff alleged that he was savagely beaten and shot with a stun gun during an arrest, finding that the record

created a genuine issue of material fact as to the reasonableness of the force used.  See

also, <u>Jasper v. Thalacker</u>, 999 F.2d 353 (8th Cir. 1993)(use of a stun gun to subdue an

inmate who was threatening a prison guard did not constitute excessive force, even

when lesser force might have controlled the inmate, absent a showing that the stun gun

was used maliciously); <u>Moore v. Novak</u>, 146 F.3d 531, 532 (8th Cir. 1998)(use of stun

gun reasonable on inmate who was intoxicated, verbally abusive, had kicked an

officer, refused to comply with direct orders, and struggled to break free).

Here, the Plaintiff was being held in a secure room at the NWMC, and refused

to take oral medications that were offered to him by the NWMC staff.  See,

<u>Complaint</u>, supra at Exhibits E, G, K, and L.  Consequently, officials at the NWMC

called for additional law enforcement, and among those officers responding was Van

Schaick, who arrived with a taser gun.  <u>Id.</u>  The Plaintiff advised those present that he

had Hepatitis C, and would bite or spit at anyone who tried to approach him for the

purpose of administering medications.  <u>Id.</u>; see also, <u>Plaintiff's Response to</u>

<u>Defendants' Motion</u>, supra at p. 11, n. 13.  Van Schaick ordered the Plaintiff to roll

over onto his stomach or he would discharge the taser, and when the Plaintiff refused,

Van Schaick deployed the taser.  <u>Id.</u>

On this Record, we find that a Jury could disagree as to the reasonableness of Van Schaick's actions, and therefore, we recommend that Summary Judgment be denied on the Plaintiff's excessive force claim.  We recognize that the reasonableness calculation is a difficult one, as it must allow for the fact that law enforcement officers "are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving."  Mann v. Yarnell, 497 F.3d 822, 826 (8th Cir. 2007), quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989).  Given the Plaintiff's belligerent and threatening behavior, we believe that a police officer might have determined that some use of force was appropriate.  However, even though the Plaintiff threatened to spit at anyone who approached him, and thereby potentially expose them to the Hepatitis C virus, there is no evidence that the Plaintiff actually did spit at any time on December 29, 2004, or make any other threatening gesture.  Thus, since we cannot say that employing a taser gun, under such circumstances, was clearly permissible, we find that this is a fact question that must be decided by a Jury.[14]

---

[14]The Plaintiff also alleges that the Kittson County Defendants violated his civil rights by observing Van Schaick's behavior, and failing to intervene. See, Complaint, Docket No. 1, at ¶197.  "A claim under Section 1983 against an officer for failure to intervene necessarily assumes another officer violated the plaintiff's constitutional rights."  Brown v. City of Bloomington, 280 F. Supp.2d 889 (D. Minn. 2003), citing Putman v. Gerloff, 639 F.2d 415, 423-24 (8th Cir. 1981).  Here, since we have found that the Plaintiff's claims of excessive force as to Van Schaick survive Summary Judgment, we recommend that his failure to intervene claims, as to the Kittson County

2)    Official Immunity of Kittson County, Pennington County, and Michael Hruby ("Hruby").   In order to sustain a claim under Section 1983, a plaintiff must show that the named defendants were directly, and personally, involved in the illegal acts, or in the policy decision which created the unlawful context for those acts.   See, e.g., Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001); McNair v. Norris, 2000 WL 490709 at *1 (8th Cir., April 27, 2000); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).   Accordingly, the doctrine of respondeat superior is not available to a Section 1983 plaintiff.   See, e.g., Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978); Lux by Lux v. Hansen, 886 F.2d 1064, 1067 (8th Cir. 1989); Rasmussen v. Larson, 863 F.2d 603, 605 (8th Cir. 1988).   Moreover, a warden's, or other official's, "'general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997), quoting Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995); see also, Brisco-Wade v. Carnahan, 149 F. Supp.2d 891, 899 (E.D. Mo. 2001); Krein v. Norris, 2001 WL 33406651 at * 3 (E.D. Ark., May 19, 2000).   Absent a showing of direct and personal involvement, the only other basis, upon which a plaintiff may state a claim against a defendant, is by

---

Defendants, also survive.

demonstrating that the particular defendant failed to properly train, supervise, or control, the actions of a subordinate who invaded the plaintiff's rights.  See, <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989); <u>Ruge v. City of Bellevue</u>, 892 F.2d 738, 739-40 (8th Cir. 1989); <u>Crooks v. Nix</u>, 872 F.2d 800, 804 (8th Cir. 1989).

The Plaintiff is suing Kittson County, Pennington County, and Hruby, based solely upon the alleged acts or omissions of their employees, specifically, the individual law enforcement officers who were responsible for the Plaintiff during his detention at the Jail, and Van Schaick, who employed a taser gun on the Plaintiff while he was being held at the NWMC.  The Plaintiff alleges that Kittson County is liable for the failure to train its employees, and for the negligent retention of Hultgren, Porter, and Dalzell, see, <u>Complaint</u>, supra at ¶¶10-11, that Pennington County is liable for the negligent retention of Van Schaick, <u>id.</u> at ¶57, and that Hruby is liable for the failure to train Van Schaick.  <u>Id.</u> at ¶62.

A County can be liable under Section 1983 if a plaintiff can prove that it has adopted some policy, custom, or practice, that caused a violation of the Plaintiff's Federal constitutional rights.  See, <u>Lund v. Hennepin County</u>, 427 F.3d 1123, 1125 (8th Cir. 2005); <u>City of Canton v. Harris</u>, 489 U.S. 378, 386-87 (1989); see also, <u>Angarita v. St. Louis County</u>, 981 F.2d 1537, 1546 (8th Cir. 1992)("A municipality may be held

liable under Section 1983 only if a municipal custom or policy caused the deprivation of [a] right protected by the constitution or federal laws."); <u>Williams v. Little Rock Municipal Water Works</u>, 21 F.3d 218, 223 (8th Cir. 1994)("[M]unicipal governments can be held liable for the acts of their employees in contravention of the civil rights of individuals only upon a showing that a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers' is the motivating force behind the acts of those employees"), quoting <u>Monell v. Dept. of Social Services</u>, supra at 690.

Here, the Plaintiff has not alleged that Pennington County has adopted an unconstitutional custom or policy, but instead, he alleges claims of negligent supervision, retention, and training. Failure to properly train and supervise municipal employees can give rise to liability under Section 1983, but "'[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under [Section] 1983.'" <u>Gatlin ex rel. Estate of Gatlin v. Green</u>, 362 F.3d 1089, 1094 (8th Cir. 2004), quoting <u>City of Canton v. Harris</u>, supra at 389 (citations omitted).  As explained by our Court of Appeals:

> A city * * * may be liable for deficient policies regarding hiring and training police officers where (1) the city's hiring and training practices are inadequate; (2) the city was deliberately indifferent to the rights of others in adopting them, such that the 'failure to train reflects a deliberate or conscious choice by a municipality,' * * * and (3) an alleged deficiency in the city's hiring or training procedures actually caused the plaintiff's injury. * * * It is necessary to show 'that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.' * * * In other words, the plaintiff must demonstrate that the city 'had notice that its procedures were inadequate and likely to result in a violation of constitutional rights.

Andrews v. Fowler, 98 F.3d 1069, 1076 (8th Cir. 1996)(citations omitted).

Similarly, a supervisor "may be held individually liable * * * if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights." Vaughn v. Greene County, Ark., 438 F.3d 845 (8th Cir. 2006), quoting Wever v. Lincoln County, Neb., 388 F.3d 601, 606 (8th Cir. 2004).

We find that the Plaintiff cannot sustain his Section 1983 claim against Pennington County, with just his vague and conclusory allegation that those Defendants poorly trained or supervised their employees, and therefore, we recommend that the claims as to Pennington County be dismissed.

Reading the Plaintiff's claims generously, the Plaintiff alleges that Kittson County has adopted a policy of "fraudulent use of form MHD2 in conjunction with MHD3" which, he alleges, promotes violations of Minnesota Statutes Section 253B, as well as individual civil rights.  See, Complaint, supra at ¶10.  However, a failure to train or supervise the individual Defendants cannot be inferred from just the isolated incident described in the Plaintiff's Complaint, see, Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985)(an actionable policy or custom cannot be inferred from a single instance of unconstitutional activity) -- namely, that Porter falsified information on the MHD2 emergency civil commitment form -- and the Plaintiff has not alleged that Kittson County had a policy or custom that gave rise to the alleged constitutional violations.  See, Rogers v. Rulo, 712 F.2d 363, 366(8th Cir. 1983) (affirming Directed Verdict for defendant when a Section 1983 complaint failed to show an affirmative link between incidents of misconduct and the adoption of an official policy).

In addition, the Plaintiff has not claimed that Hruby, or any official representative of Kittson or Pennington County, was aware of the alleged violation of the Plaintiff's constitutional rights by Hultgren, Dalzell, Porter, or Van Schaick, but were deliberately indifferent to the possibility of injury to the Plaintiff, and similarly,

he has not introduced any evidence, which would support his Motion for Summary Judgment on that claim.  Therefore, the Plaintiff's Section 1983 claim against Kittson and Pennington County, and Hruby, cannot survive their Motion to Dismiss.  See, Williams v. Little Rock Municipal Water Works, supra at 223-24 (municipality was entitled to summary dismissal of plaintiff's Section 1983 claims where plaintiff presented no circumstantial or direct evidence of any custom or policy that violated plaintiff's constitutional rights, and therefore, "no reasonable factfinder would conclude that there was any [such] policy or custom.").

        b.     The Claims Against the Medical Defendants.  In Count XV, the Plaintiff alleges that the Medical Defendants violated his civil rights when they admitted him to the NWMC, and administered neuroleptic medications against his will.  See, Complaint, supra at ¶¶293-345.  Specifically, the Plaintiff claims that the Medical Defendants were acting under color of State law when they admitted the Plaintiff, pursuant to the Kittson County Defendants' request for emergency commitment, allowed him to be shot with a taser gun, and administered neuroleptic medications without a Court Order, or the Plaintiff's consent.

The Medical Defendants argue that the Plaintiff's Section 1983 claims against them should be dismissed, as each of the Medical Defendants is a private actor, who was not acting under color of State law.

      1)      <u>Standard of Review</u>. To state an actionable civil rights claim under Title 42 U.S.C. §1983, as the Plaintiff is attempting to do here, a complainant must allege historical facts which, if proven true, would demonstrate that the named Defendants violated the complainant's Federal constitutional rights while acting under color of State law. See, <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); see also, <u>Hart v. City of Little Rock</u>, 432 F.3d 801, 804 (8th Cir. 2006), cert. denied, --- U.S. ---, 126 S.Ct. 2902 (2006)(to state an actionable Section 1983 civil rights claim, a plaintiff must show "'(1) [a] violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right'"), quoting <u>Kuha v. City of Minnetonka</u>, 365 F.3d 590, 606 (8th Cir. 2003), quoting, in turn, <u>Shrum v. Kluck</u>, 249 F.3d 773, 777 (8th Cir. 2001). Although Federal Courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." <u>Martin v. Aubuchon</u>, 623 F.2d 1282, 1286 (8th Cir. 1980); see also, <u>Martin</u>

- 64 -

v. Sargent, supra at 1337 ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions.").

To determine if there is State action in a matter, we examine the Record to ascertain "whether the conduct at issue is 'fairly attributable' to the state.'" Wickersham v. City of Columbia, 481 F.3d 591, 597 (8th Cir. 2007), cert. denied., --- U.S. ---, 128 S.Ct. 387 (2007), quoting Montano v. Hedgepeth, 120 F.3d 844, 848-49 (8th Cir. 1997), quoting in turn, Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Although the requirement that a claim, under Section 1983 must have been undertaken under color of State law, excludes "merely private conduct, no matter how discriminatory or wrongful," Americans United for Separation of Church and State v. Prison Fellowship Ministries, Inc., 509 F.3d 406, 421-22 (8th Cir. 2007), quoting American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 50 (1999), quoting, in turn, Blum v. Yaretsky, 457 U.S. 991, 102 (1992), "[i]n certain circumstances the government may become so entangled in private conduct that 'the deed of an ostensibly private organization or individual is to be treated * * * as if a State had caused it to be performed.'" Id. at 422, quoting Wickersham v. City of Columbia, supra at 597, quoting, in turn, Brentwood Academy v. Tennessee Secondary School Athletic Association, 531 U.S. 288, 295 (2001).

State action will be found if there is a "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself," Brentwood Academy v. Tennessee Secondary School Athletic Association, supra at 295, as when the private actor performs a function "traditionally exclusively reserved to the state," Reasonover v. St. Louis Co., Mo., 447 F.3d 569, 584 (8th Cir. 2006), quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974), when a private party is "a willful participant in joint activity with the State or its agents," Wickersham v. City of Columbia, supra at 597, quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970), and where there is "pervasive entwinement" between the private entity and the State. Wickersham v. City of Columbia, supra at 597, quoting Brentwood Academy v. Tennessee Secondary School Athletic Association, supra at 291.  The Supreme Court has established a two-part test to determine if such a nexus exists:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible * * *.  Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

Lugar v. Edmondson Oil Co., Inc., supra at 937.

- 66 -

2)      Legal Analysis.  As to the first part of the test, the Plaintiff alleges that he was deprived of his right, as a pretrial detainee, to be free from cruel and unusual punishment under the Fourteenth Amendment, and that deprivation was created by Minnesota Statutes Section 253B.01 et seq., which provides for the involuntary civil commitment of individuals who have been determined by law enforcement to be mentally ill, and in danger of injuring themselves. or another person.  See, Minnesota Statutes Section 253B.05, Subdivision 2.

The second, critical inquiry rests on whether the Medical Defendants can be classified as State actors.  The NWMC is a privately-owned medical care facility, and NWMC employees are not classified as State, or Federal employees.  See, Affidavit of Tom Wang, Docket No. 19, at Exhibit H.  Although a private entity may be considered a State actor if it "has acted together with or has obtained significant aid from state officials," Wickersham v. City of Columbia, supra at 597, quoting Lugar v. Edmondson Oil Co., Inc., supra at 937, the mere acquiescence of the State in the private actions is not sufficient.  See, Reinhart v. City of Brookings, 84 F.3d 1071, 1073 (8th Cir. 1996), citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 165 (1978).

In Campbell v. Glenwood Hills Hospital, Inc., 224 F. Supp. 27, 28 (D. Minn. 1963), a claimant brought an action under Section 1983 against a private hospital, and

several staff members of that hospital, alleging that they acted under color of State law
when they committed him, and caused him to be medicated pursuant to an Order
issued by a State Court.  In holding that the hospital and its employees were not State
actors, the Court noted that "the power which is allegedly misused must be derived
from some actual vesting of authority by the state," and found that, while the
Commitment Order vested the defendants with the power to confine and detain the
complainant for the purpose of treatment, and obligated them to submit reports to the
committing Court, the defendants were not paid from the State coffers, and were not
answerable to the State Welfare Commissioner.[15]   Id. at 30-31.   Similarly, in
Hendricks v. Rasmussen, 2001 WL 1631325 at *2 (D. Minn., July 27, 2001), aff'd,
23 Fed.Appx. 639 (8th Cir. 2002)(citing cases), the Court noted that, while our Court
of Appeals had not addressed the issue, "the clear majority of courts that have
considered the question agree" that the signing of an examining physician's statement
in support of emergency hospitalization "does not constitute state action."  Cf., West

---

[15]Although the Court in Campbell v. Glenwood Hills Hospital, 224 F. Supp. 27,
32 (D. Minn. 1963), concluded that the defendants were not State actors, it noted, in
the alternative, that "[t]he superintendent and doctors working in a hospital, whether
it is a private institution or a state hospital, should not be held responsible to determine
the validity of a court order of commitment where, on its face, the order appears to be
valid."

v. Atkins, 487 U.S. 42, 53-54 (1988)(contract physician's medical care of a State inmate is conduct "fairly attributable to the State").

Here, the Plaintiff has failed to allege an actionable Section 1983 claim, or any other Federal cause of action upon which relief can be granted, because there are no factual allegations suggesting that any of the Medical Defendants were acting under color of State law, during the course of any of the events described in the Complaint. To the contrary, it clearly appears, from the allegations in the Complaint, that the Medical Defendants are purely private parties, who were acting in that capacity in all of the matters described in the Complaint. Porter, who is a State actor, applied for an emergency hospitalization of the Plaintiff on December 29, 2004, pursuant to Minnesota Statutes Section 253B.05, Subdivision 2. See, Docket No. 19, Exhibit C. The NWMC Defendants accepted Porter's request for the emergency commitment of the Plaintiff, administered medications, and examined the Plaintiff, who was released to the custody of the Kittson County Defendants on the following day. The Plaintiff has failed to introduce any evidence that the NWMC Defendants were in the employ of the State, or were vested some authority by the State, and consequently, his claims, as to the NWMC Defendants must fail, and their Motion for Summary Judgment should be granted.

c.    The City Defendants.  The City Defendants have brought a Motion to Dismiss the Plaintiff's Complaint, and argue that they are entitled to qualified and official immunity, and additionally, they allege that the Complaint should be subject to dismissal for failure to comply with the requirement of Rule 8, Federal Rules of Civil Procedure, that it include a "short and plain statement of the claim."  See, Rule 8, Federal Rules of Civil Procedure.

As a threshold matter, we cannot agree with the City Defendants' assertion that the Complaint fails to comply with Rule 8, Federal Rules of Civil Procedure.  Rule 8 does not require detailed fact pleading, but merely that the complaint "give[s] the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests."  Gardner v. First American Title Ins. Co., 294 F.3d 991, 994 (8th Cir. 2002), citing Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), quoting in turn, Conley v. Gibson, 355 U.S. 41, 47 (1957).  While we note that "Section 1983 disputes, which frequently are spawned in rage or insult, lend themselves to * * * imprecision and vagueness," we have previously expressed our reluctance to employ Rule 8 as a impervious barrier to a pro se plaintiff in a Section 1983 action.  See, Ringsred v. City of Duluth, 187 F. Supp.2d 1141, 1152 (D. Minn. 2001).  Moreover, in reviewing the Plaintiff's Complaint, we find that its allegations are fairly clear, and adequately

provided the City Defendants with notice of his claims against them.  Thus, we decline to grant the City Defendants' Motion to Dismiss, on the basis of any violations of Rule 8, Federal Rules of Civil Procedure.

The Plaintiff's claims against the City Defendants relate to the events that took place on December 29, 2004.  The Plaintiff alleges that City of Thief River Falls Police Officers G. Hanson, Lindgren, and Kezar, used excess force when they held him down at the NWMC, after he was shot with the taser gun, which resulted in damage to the cartilage of his nose, see, Complaint, supra at ¶¶73-89, and that the City of Thief River Falls, and the City of Thief River Falls Chief of Police, are liable for the failure to train, and for the negligent retention of, those officers.  See, Complaint, supra at ¶69.  The Plaintiff additionally claims that D. Hanson prevented him from telephoning his attorney, and that the City of Hallock is liable for the negligent training and retention of D. Hanson.  Id. at ¶¶49, 129, 194, 197, (201).

    1)    Qualified Immunity as to G. Hanson, Lindgren, Kezar, and D. Hanson.  As we have previously detailed, qualified immunity is available to an official when his allegedly unlawful action was objectively, legally reasonable, as assessed in the light of the clearly established legal rules at the time that the action was taken.  Wilson v. Layne, supra at 614.  Thus, no liability will attach if it was

"sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, supra at 641. In a Section 1983 action, we "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all * * *." Jones v. Shields, supra at 494, quoting Wilson v. Layne, supra at 603. "Only then do we ask whether that right was clearly established at the time of the alleged violation." Id.; see, Coonts v. Potts, supra at 750, citing Siegert v. Gilley, supra at 232.

Here, the only wrongful actions that the Plaintiff alleges against G. Hanson, Lindgren, and Kezar, is that they used excessive force when they held him down after he was shot with a taser gun at the NWMC, and that, as a result, his nose was broken. As we have previously noted, "[t]he alleged use of excessive force is generally an issue of fact." Duncan v. Storie, supra at 1103, citing Patzner v. Burkett, supra at 1371. The Defendants have only moved to dismiss the Plaintiff's Complaint, and the Plaintiff has alleged that his right, as a pretrial detainee, under the Fourteenth Amendment to be free of excessive force was violated, and that he was injured as a

result.   On the pleadings, the Plaintiff has stated cognizable claims, and we recommend that the Motion to dismiss those claims be denied.

As to D. Hanson, the Plaintiff alleges that he violated the Plaintiff's constitutional rights, by refusing to allow him to telephone his attorney on his admission to the NWMC.  As previously addressed, the Plaintiff has alleged that he had a right to counsel, pursuant to the Sixth Amendment, on his civil commitment, and that various of the Defendants, including D. Hanson, deprived him of that right. However, as we previously explained, the Sixth Amendment right to counsel only attaches when criminal proceedings are initiated, see, <u>Austin v. United States</u>, supra at 602, and, since the Plaintiff was subject to a **civil** commitment, he has failed to state a claim against D. Hanson, and therefore, we recommend that the Motion to Dismiss, as to D. Hanson, be granted.

2)   <u>Official Immunity as to The City of Thief River Falls, the City of Thief River Falls Police Chief, and the City of Hallock</u>.  In his Complaint, the Plaintiff alleges that the City of Hallock is liable for the negligent retention of its employee D. Hanson, and that the City of Thief River Falls, and/or the City of Thief River Falls Police Chief, is liable for the negligent training, and retention, of its employees G. Hanson, Lindgren, and Kezar.  See, <u>Complaint</u>, supra at ¶¶49, 69-70.

- 73 -

As we have previously explained, in order to bring a claim, under Section 1983, against municipal defendants for the acts of their agents, the Plaintiff must "identify a governmental 'policy or custom that caused the plaintiff's injury.'" <u>Brockinton v. City of Sherwood, Ark.</u>, 503 F.3d 667, 674 (8th Cir. 2007), citing <u>Monell v. Dept. of Social Servs.</u>, supra at 691, and <u>Bd. of the County Commissioners v. Brown</u>, 520 U.S. 397, 403 (1997). In the Complaint, the Plaintiff has not referred to any such policy or custom, that was promulgated or maintained by either the City of Hallock, the City of Thief River Falls, or the Police Chief of Thief River Falls, and likewise, he has not alleged that the Police Chief was personally involved in any of the acts that, he alleges, violated his constitutional rights. An actionable policy or custom cannot be inferred from a single instance of unconstitutional activity, see, <u>Oklahoma City v. Tuttle</u>, supra at 823-24, and here, the Plaintiff has done no more than allege an isolated incident of purportedly unlawful behavior, without any corresponding allegation that this behavior was enabled by a policy or custom. Accordingly, we find that the Motion to Dismiss the claims as to The City of Thief River Falls, the City of Thief River Falls Police Chief, and the City of Hallock, should be granted.

B.      <u>The Plaintiff's State Law Claims</u>. In addition to his constitutional claims, the Plaintiff also alleges a State law claim of false imprisonment against all of the

Defendants.  The Medical Defendants argue that the Plaintiff's false imprisonment claims should be dismissed, as the Minnesota statute of limitations has run on that claim.

In Minnesota, the statute of limitations for intentional torts, including false imprisonment, is two (2) years.  See, <u>Minnesota Statutes Section 541.07(1)</u>; see also, <u>Savage v. United States</u>, 450 F.2d 449, 451 (8th Cir. 1971); <u>Hayes v. Blue Cross Blue Shield of Minn.</u>, 21 F. Supp. 2d 960, 977 (D. Minn. 1998); <u>Mellett v. Fairview Health Services</u>, 634 N.W.2d 421, 424 (Minn. 2001).  The Plaintiff's false imprisonment claims against all of the Defendants arise from his detention at the NWMC, which lasted from December 29, 2004, through December 30, 2004.  See, <u>Medical Defendants' Memorandum in Support</u>, supra at Exhibit D.  Therefore, the statute of limitations period for this claim expired on December 30, 2006.  The Plaintiff commenced this lawsuit on April 16, 2007, over three (3) months after the statute of limitations had run.  Therefore, we are obligated to recommend that the Medical Defendants' Motion for Summary Judgment, as to the Plaintiff's false imprisonment claim, be granted.

C.    <u>The Plaintiff's Motion for a Mistrial and for Sanctions</u>.  The Plaintiff has filed a Motion for Mistrial and a Motion for Sanctions, see, <u>Docket No. 43</u>, in which

he alleges that the Defendants, and their counsel, have prejudiced these proceedings by submitting irrelevant evidence and false reports, and he argues that, as a result, we should declare a mistrial, impose sanctions on the Defendants and their counsel, and recuse ourselves from any future litigation involving these parties.

At the outset, while the Plaintiff asks us to declare a "mistrial" in this matter, in fact, no Trial has taken place as of this date.  Instead, the parties -- including the Plaintiff -- have engaged in pretrial Motion practice, and have submitted dispositive Motions to the Court, with the ultimate goal of avoiding Trial on those issues that involve pure questions of law.  Moreover, the only allegation, that the Plaintiff makes in support of his Motion, is that the Court has been prejudiced by the allegedly fraudulent and irrelevant submissions of the Defendants.  We take this means of assuring the Plaintiff that we examine all of the evidence that is submitted in the cases before us, and we afford the evidence such weight as it deserves.  As he has failed to make some specific showing of fraud on the Court, however, we are unable to find that any of the submissions before us are fraudulent, so as to warrant a censure.

Similarly, we decline the Plaintiff's invitation to sanction the Defendants, and their attorneys, for any submissions they have made in this matter, especially as the sanction that the Plaintiff recommends is the dismissal of the case in its entirety.

Upon a proper showing of cause, we would not be hesitant to recommend sanctions to a deserving party, but the simple fact is that the Plaintiff has not demonstrated any objectively wrongful behavior on the part of the Defendants, or their counsel, in the processing of this case toward Trial, and therefore, we have no occasion to recommend that any sanction be imposed upon the Defendants, much less that the sanction be an award of Judgment, as a matter of law, to the Plaintiff.

Lastly, we decline the Plaintiff's implicit request that we recuse ourselves from this matter, as we hold no prejudice, or bias, toward any party. The Plaintiff, as well as the Defendants, is entitled to a fair hearing on the issues, and we assure all that we approach this case impartially, and without preconception

NOW, THEREFORE, It is --

RECOMMENDED:

1.      That the Motion to Dismiss, or for Summary Judgment, of Marlene Beedy, Sharon Benson, Mary McEnelly, Kathy Mercil, Northwest Medical Center, Amanda Peterson, Timothy Rittenour, Nichole Weinen, Ellie Wiemerslage, and Unknown Records Department Personnel [Docket No. 17], be granted.

2.      That the Motion to Dismiss of the City of Hallock, Dale Hanson, the City of Thief River Falls, the City of Thief River Falls Police Chief, Gerald Hanson, Charles Lindgren, and Ryan Kezar [Docket No. 22], be granted, in part, and the claims as to Dale Hanson, the City of Thief River Falls, the City of Thief River Falls Police Chief, and the City of Hallock, be dismissed.

3.      That the Motion to Dismiss, or for Summary Judgment, of Lou Ann Dalzell, Michael Hruby, Kenny Hultgren, Kittson County, Pennington County, Steve Porter , and James Van Schaick [Docket No. 26], be granted in part, with the following claims being allowed to proceed:

        a)      The Plaintiff's First Amendment claims against Hultgren, Porter, and Dalzell, for denial of access to the Courts (Count III).

        b)      The Plaintiff's First and Sixth Amendment claims against Porter, and Dalzell, for interference with legal mail (Count VI).

c)      The Plaintiff's Fourteenth Amendment claims against Hultgren, Porter, and Dalzell, for denial or interference with medical treatment for Hepatitis C, eyeglasses, and dental care (Counts VII, VIII, IX).

d)      The Plaintiff's Fourteenth Amendment claims against Van Schaick for excessive force, and against Porter, and Dalzell, for failure to intervene (Count X).

e)      The Plaintiff's Fourteenth Amendment claims against Hultgren, Porter, and Dalzell, for violation of procedural due process (Count XIII).

4.      That the Plaintiff's Motion for Default Judgment [Docket No. 42], be denied.

5.      That the Plaintiff's Motion for Summary Judgment [Docket No. 42], be denied.

6.      That the Plaintiff's Motion for Mistrial [Docket No. 43], be denied.

7.      That the Plaintiff's Motion for Sanctions [Docket No. 43], be denied.

8.      That the Plaintiff's Motion for Default Judgment [Docket No. 44] be denied, as moot.

9.      That the Plaintiff's Motion for Summary Judgment [Docket No. 44], be denied, as moot.

10.     That the Plaintiff's Motion for Appointment of Counsel [Docket No. 44], be denied.


Dated:  February 19, 2008          s/Raymond L. Erickson
                                   Raymond L. Erickson
                                   CHIEF U.S. MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 7, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **March 7, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.