# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Michael J. Bailey,

               Plaintiff,

      v.

County of Kittson, Kenny Hultgren, LoAnn
Dalzell, Steve Porter, City of Hallock,
Dale Hanson, Pennington County, Michael
Hruby, James Van Schaick, City of Thief
River Falls, City of Thief River Falls Chief
of Police, Gerald Hanson, Charles Lindgren,
Ryan Kezar, Northwest Medical Center, Ellie
Wiemerslage, Mary McEnelly, Timothy
Rittenour, Marlene Beedy, Nichole Weinen,
Kathy Mercil, Sharon Benson, Amanda
Peters, Unknown Records Department
Personnel and Unknown Persons,

               Defendants.[1]

**MEMORANDUM OPINION
AND ORDER**
Civ. No. 07-1939 ADM/RLE

---

Michael J. Bailey, *pro se*.

Jason M. Hill, Esq., and Roger L. Rowlette, Esq., Johnson & Lindberg, P.A., Minneapolis, MN,
on behalf of County of Kittson, Kenny Hultgren, LoAnn Dalzell, Steve Porter, Pennington
County, Michael Hruby, and James Van Schaick.

Jon K. Iverson, Esq., and Amber S. Lee, Esq., Iverson Reuvers, LLC, Bloomington, MN, on
behalf of City of Hallock, Dale Hanson, City of Thief River Falls, City of Thief River Falls
Chief of Police, Gerald Hanson, Charles Lindgren, and Ryan Kezar.

Randall S. Hanson, Esq., Camrud, Maddock, Olson & Larson, Ltd., Grand Forks, ND, on behalf
of Northwest Medical Center, Ellie Wiemerslage, Mary McEnelly, Timothy Rittenour, Marlene
Beedy, Nichole Weinen, Kathy Mercil, Sharon Benson, Amanda Peters, and Unknown Records
Department Personnel.

---

[1] Plaintiff named "Amanda Peterson" and "Lou Ann Dalzell" as defendants.  The Court
assumes Plaintiff intended to name  "Amanda Peters" and "LoAnn Dalzell."

## I. INTRODUCTION

This matter is before the undersigned United States District Judge for consideration of objections to Chief Magistrate Judge Raymond L. Erickson's February 19, 2008, Report and Recommendation ("R&R") [Docket No. 60].  The R&R recommends that this Court grant the Motion to Dismiss and Alternatively [for] Summary Judgment [Docket No. 17], filed by Northwest Medical Center ("NWMC"), Marlene Beedy ("Beedy"), Sharon Benson ("Benson"), Mary McEnelly ("McEnelly"), Kathy Mercil ("Mercil"), Amanda Peters ("Peters"), Timothy Rittenour ("Rittenour"), Nichole Weinen ("Weinen"), Ellie Wiemerslage ("Wiemerslage") and Unknown Records Department Personnel (collectively, the "Medical Defendants").  The R&R recommends that the following motions be granted in part and denied in part: (1) the Motion to Dismiss [Docket No. 22] filed by the City of Hallock, Dale Hanson, the City of Thief River Falls, the City of Thief River Falls Chief of Police Gerald Hanson, Charles Lindgren ("Lindgren"), and Ryan Kezar ("Kezar") (collectively, the "City Defendants"); and (2) the Motion to Dismiss, or in the Alternative for Summary Judgment [Docket No. 26] filed by Kittson County, Kenny Hultgren ("Hultgren"), LoAnn Dalzell ("Dalzell"), Steve Porter ("Porter") (collectively, the "Kittson County Defendants"), Pennington County, Michael Hruby, and James Van Schaick (collectively, the "Pennington County Defendants").  The R&R recommends denial of Plaintiff Michael J. Bailey's ("Plaintiff") Motions for Default Judgment, or Alternatively for Summary Judgment [Docket Nos. 42 and 44], Motion for Mistrial and for Sanctions [Docket No. 43], and Motion for Appointment of Counsel [Docket No. 44]. Objections to the R&R have been filed by Plaintiff [Docket Nos. 66 and 67] and by the Kittson and Pennington County Defendants [Docket No. 65].  For the reasons set forth below, Plaintiff's

Objections are sustained in part and overruled in part, and the Kittson and Pennington County Defendants' Objections are sustained in part and overruled in part.

## II. BACKGROUND

On December 1, 2004, Kittson County Deputy Sheriff Porter arrested Plaintiff for making terroristic threats to a Kittson County deputy court administrator.  State v. Bailey, No. A05-2107, 2007 WL 1053011 (Minn. Ct. App. April 10, 2007).  From December 1, 2004, until June 14, 2005, Plaintiff was incarcerated as a pretrial detainee.  Compl. ¶ 3.  Plaintiff avers that during this time period, he spent time in the Kittson County Jail, the Pennington County Jail, and the Marshall County Jail.  Id. at 3 n.2.  In June 2005, Plaintiff was convicted of one count of terroristic threats in violation of Minn. Stat. § 609.713, subd. 1 (2004), and sentenced to thirty months.  Bailey, 2007 WL 1053011 at *1-2.  It appears that Plaintiff is now on supervised release and resides in Texas.

The instant action arises from conduct that allegedly occurred while Plaintiff was a pretrial detainee.  Compl. ¶ 3.  The following facts relevant to Plaintiff's claims are taken from Plaintiff's Complaint, except where noted otherwise.  The factual allegations in Plaintiff's Complaint are assumed to be true for the purpose of the motions to dismiss filed by Defendants.  Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994) (stating that facts alleged in the complaint are taken as true for purpose of motion to dismiss).

On the morning of December 29, 2004, while Plaintiff was incarcerated in the Kittson County Jail, Plaintiff told his cell mate, Joey Arnal ("Arnal"), that Deputy Sheriff Porter and Deputy Sheriff Dalzell were liars.  Compl. ¶ 226.  During this discussion, Plaintiff was yelling, swearing, and wildly waving his arms.  Id. Exs. O-P.  Kittson County Jail personnel informed

Porter of Plaintiff's actions.  Id. Ex. P.  When Porter approached Plaintiff's cell and asked what

was wrong, Plaintiff replied, "you're a fucking liar."  Id. ¶ 240.  Porter's report of the incident

states that Plaintiff repeatedly screamed "fuck you" when Porter tried to calm Plaintiff.  Id.

Ex. G.  Porter entered Plaintiff's cell, sat down next to Plaintiff on Plaintiff's bed, and grabbed

Plaintiff's arm.  Id. ¶ 241.  Plaintiff moved and told Porter to "stay away from me," and Porter

left the cell.  Id. ¶ 241.

After a brief interval, Porter returned to Plaintiff's cell and asked Plaintiff if he needed to

be taken to the third floor.  Id. ¶ 246.  Plaintiff did not understand until later that the "third floor"

was a reference to NWMC.  Id.  Porter warned Plaintiff that he must submit to being handcuffed

or Porter would use pepper spray.  Id. ¶ 245.  After Plaintiff submitted to being handcuffed,

Porter took Plaintiff to the lobby of the Kittson County Jail and instructed Plaintiff to sit in a

chair.  Id. ¶ 246.  Porter and Dalzell discussed transporting Plaintiff to NWMC.  Id.  Plaintiff

overheard the discussion and asked to call his attorney.  Id. ¶ 248.  Porter and Dalzell refused

Plaintiff's request.  Id. ¶ 267.  After approximately forty-five minutes, City of Hallock Police

Chief Dale Hanson arrived and he and Porter transported Plaintiff to NWMC.  Id. ¶¶ 247, 269,

Ex. Q.

At NWMC, Porter completed Minnesota Form MHD2, entitled "Application By Peace or

Health Officer For Emergency Hospitalization."  Id. Ex. F.  Porter reported that he believed

Plaintiff was a "mentally ill person in imminent danger of causing injury to himself or others if

not immediately restrained."  Id. Ex. F.  Specifically, Porter stated: "Today [Plaintiff] . . .

bec[a]me very angry and could not be reasoned with.  He was hollering, swearing and waving

his arms around.  [Plaintiff] has been a model prisoner, and today was almost uncontrollable.  I

thought that he may strike me or the other prisoner in his cell." Id. Ex. F (emphasis in original).

Meanwhile, Plaintiff, whose handcuffs had been removed, asked NWMC nurse Beedy or Weinen for his glasses case, which contained his attorney's business card. Id. ¶¶ 279, 282, Ex. P. The nurse refused to allow Plaintiff to call his attorney, Plaintiff then slid his glasses case across the floor and said, "fucking bitch don't ask me anything then." Id. ¶ 286. Porter and Dale Hanson physically moved Plaintiff to a secure cell. Id. ¶ 287. Porter instructed Plaintiff to remove his clothing and put on a hospital shirt and pants. Id. ¶ 288. Plaintiff initially refused, stating "just close the door and leave me the fuck alone." Id. ¶ 289. After a NWMC nurse instructed him to change his clothes, Plaintiff reluctantly complied and threw his glasses case across the floor. Id. ¶ 338, Ex. E. NWMC nurse Weinen's notes reflect that NWMC staff offered Plaintiff oral medication. Medical Defs.' Ex. F [Docket No. 19]. Plaintiff sat with his back to the wall and stated that he would not take any medication. Compl. ¶ 338, Ex. E.

Additional law enforcement personnel were requested. Id. ¶ 338, Ex. E. Gerald Hanson, Lindgren, and Kezar of the Thief River Falls Police Department, and Pennington County Deputy Van Schaick responded to the call. Id. Van Schaick arrived with a taser. Id. Nurse Weinen's notes indicate that certified registered nurse McEnelly ordered that Plaintiff be injected with neuroleptic medication because Plaintiff was uncooperative and verbally abusive to the nurses and officers present. Medical Defs.' Ex. F. Porter and Van Schaick warned Plaintiff that if he did not roll over and allow the medical staff to inject him with neuroleptic (psychotic) medication, Van Schaick would taser him. Compl. ¶ 338, Ex. E. Plaintiff replied, "fuck you, you will kill me," and he threatened that he had Hepatitis C and he would bite or spit on anyone who approached him. Id. ¶ 338, Ex. E. In response, Van Schaick shot Plaintiff with the taser,

5

and then Gerald Hanson, Lindgren, and Kezar held Plaintiff on the ground.  Id. ¶ 338.  While

Plaintiff was restrained, Beedy and Weinen injected two shots of neuroleptic medication into

Plaintiff's buttocks.  Id. ¶ 338.  Van Schaick's incident report reflects that in addition to the

officers listed above, nurses Beedy, Weinen, Mercil, Benson, and Peters were present.  Id. Ex. L.

NWMC staff hospitalized Plaintiff overnight in the NWMC Mental Health Division for routine

psychiatric testing.  Id. Ex. J.  Staff Clinical Psychologist Wiemerslage recorded that Plaintiff did

not present significant psychiatric symptoms while he was hospitalized, and Plaintiff was

discharged to jail custody on December 30, 2004.  Id. Ex. J.

     Plaintiff's Complaint also alleges claims that the Kittson County Defendants stored his

medical and financial records in an unsecured room and that certain records were missing when

they were returned to him.  Id. ¶¶ 147-48.  Jail Administrator Dalzell and Porter seized Plaintiff's

legal materials, and Sheriff Hultgren acquiesced, which prevented Plaintiff from bringing a claim

of discriminatory prosecution in his pending criminal trial, and they required Plaintiff to submit

his legal correspondence unsealed.  Id. ¶¶ 154, 162, 164-65.  The Kittson County Defendants

denied Plaintiff access to medical treatment when they refused to transport him for appointments

to receive dentures and new eyeglasses that had been scheduled prior to his arrest.  Id. ¶ 171.

The Kittson County Defendants also did not allow Plaintiff to take prescription medications for

his Hepatitis C.  Id. ¶¶ 171-72.

     Plaintiff initiated this *pro se* litigation on April 16, 2007.  Plaintiff asserts numerous

claims under 42 U.S.C. § 1983 for constitutional violations.  Plaintiff also purports to raise

various claims under Minnesota law.

## III. DISCUSSION

**A.      Standard of Review**

**1.      Magistrate Judge's Report and Recommendation**

"The district judge must determine de novo any part of the magistrate judge's [recommended] disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

**2.      Motion for Judgment on the Pleadings**

The Defendants have filed motions to dismiss, which this court construes as motions for judgment on the pleadings.  Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  A motion for judgment on the pleadings is analyzed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true.  Hamm, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party.  Ossman, 825 F. Supp. at 880.  "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."  Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings "shall contain . . .  a

short and plain statement of the claim showing that the pleader is entitled to relief." A pleading

must contain "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp.</u>

<u>v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).

### 3.      Motion for Summary Judgment

In the alternative, the Kittson County, Pennington County, and Medical Defendants move

for summary judgment. Federal Rule of Civil Procedure 56(c) provides that summary judgment

shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see</u> <u>Matsushita Elec. Indus. Co. v. Zenith</u>

<u>Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252

(1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). On a motion for summary judgment,

the Court views the evidence in the light most favorable to the nonmoving party. <u>Ludwig v.</u>

<u>Anderson</u>, 54 F.3d 465, 470 (8th Cir. 1995). The nonmoving party may not "rest on mere

allegations or denials, but must demonstrate on the record the existence of specific facts which

create a genuine issue for trial." <u>Krenik v. County of Le Sueur</u>, 47 F.3d 953, 957 (8th Cir. 1995).

## B.      Plaintiff's Claims

### 1.      Whether Plaintiff Has Asserted Individual-Capacity Claims Under § 1983

Before addressing the individual counts of the Complaint, the Court will consider a

threshold pleading issue. Most of Plaintiff's claims are asserted under 42 U.S.C. § 1983, which

provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
> any State . . . subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

8

Plaintiff asserts § 1983 claims against Kittson County, Pennington County, the City of Thief River Falls, the City of Hallock, NWMC, and a number of individuals associated with these entities.  Judge Erickson concluded that Plaintiff failed to satisfy the Eighth Circuit's pleading requirement for asserting § 1983 claims against individuals in their individual capacities.  R&R at 18 n.4.  Plaintiff objects to this conclusion.  Pl.'s Objections [Docket No. 66] at 39-40.

"Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both."  Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).  "Generally, individual-capacity suits involve actions taken by governmental agents outside the scope of their official duties.  Official-capacity suits typically involve either allegedly unconstitutional state policies or unconstitutional actions taken by state agents possessing final authority over a particular decision."  Nix v. Norman, 879 F.2d 429, 431 (8th Cir. 1989).  "An official-capacity suit is merely another way of pleading an action directly against the public entity itself."  Roberts v. Dillon, 15 F.3d 113, 115 (8th Cir. 1994).  The Supreme Court in Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 694 (1978), held that local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id.

The Eighth Circuit requires plaintiffs asserting individual-capacity § 1983 claims against a public official "to expressly and unambiguously state so in the pleadings, otherwise, it will be

assumed that the defendant is sued only in his or her official capacity." Johnson, 172 F.3d at

535.  While *pro se* complaints are construed liberally, Haines v. Kerner, 404 U.S. 519 (1972),

*pro se* plaintiffs must still specifically assert individual-capacity claims.  Taylor v. Roper, 83

Fed. Appx. 142, 143 (8th Cir. 2003) (unpublished).  The Eighth Circuit has "repeatedly stated

that section 1983 litigants wishing to sue government agents in both capacities should simply use

the following language: 'Plaintiff sues each and all defendants in both their individual and

official capacities.'"  Nix, 879 F.2d at 431 (quoting Rollins by Agosta v. Farmer, 731 F.2d 533,

536 n.3 (8th Cir. 1984)).

After reviewing Plaintiff's eighty-eight page Complaint, this Court finds that Plaintiff has

sufficiently asserted individual-capacity claims.  In the "Relief Requested" section of the

Complaint, Plaintiff states that he "respectfully requests the following relief from each defendant

according to their individual and official culpability for their specific actions and/or omissions . .

. ."  Compl. ¶ 345.  Although it would have been preferable for Plaintiff to have used the

prescribed language suggested by the Eighth Circuit, the reference to each defendant's

"individual and official culpability" places the individually-named defendants on notice that

Plaintiff is asserting individual-capacity claims against them.  Therefore, Plaintiff's objection

regarding his assertion of individual-capacity claims is sustained.

### 2.      Federal Claims Arising From Conditions At The Kittson County Jail

#### a.      Right to Financial Privacy Act

In Count One of the Complaint, Plaintiff alleges that Dalzell, Hultgren, and Porter

violated the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §§ 3401-3422, when they

seized Plaintiff's financial papers from his jail cell.  Compl. ¶¶ 145-49.  The RFPA prohibits a

"Government authority" from obtaining an individual's financial records from a financial institution unless certain conditions are met.  12 U.S.C. § 3402.  A "Government authority" is defined as "any agency or department of the United States, or any officer, employee, or agent thereof."  12 U.S.C. § 3401(3).  Dalzell, Hultgren, and Porter are not officers, employees, or agents of an agency or department of the United States.  Therefore, Plaintiff cannot assert claims against them under the RFPA.  Accordingly, the Court grants the Kittson County Defendants' motion for judgment on the pleadings as to Count One of the Complaint.  See Nuby v. S. Boston Savings Bank, No. 98-1294, 1998 U.S. App. LEXIS 26094, at *2 (1st Cir. Sept. 23, 1998) (noting that the RFPA "pertains only to *federal* agencies").

### b.    Fourth Amendment Unreasonable Seizure

In Count Two of the Complaint, Plaintiff asserts Dalzell, Hultgren, and Porter violated his Fourth Amendment right to be free from unreasonable seizures when they allegedly seized his medical, dental, and financial records from his cell.  Compl. ¶¶ 145-49.  The Supreme Court has held that convicted felons do not have reasonable expectations of privacy in their prison cells.  Hudson v. Plamer, 468 U.S. 517, 536 (1984).  Assuming arguendo that pretrial detainees can reasonably expect privacy in their jail cells, the Supreme Court has held that "any reasonable expectation of privacy that a detainee retain[s] necessarily would be of diminished scope."  Bell v. Wolfish, 441 U.S. 520, 557 (1979).

Plaintiff alleges that Dalzell seized Plaintiff's records each time Plaintiff made a court appearance, and that Hultgren and Porter acquiesced in Dalzell's actions.  Plaintiff asserts that when the records were returned to him, they were "disheveled and clearly searched, out of order, in different folders, outside of fasteners, having been removed from them, while some missing

entirely, both from their respective folders and the box they were in." Compl. ¶ 147. Given the diminished but reasonable expectation of privacy pretrial detainees have in their jail cells, the Court finds that Plaintiff's allegation that his medical, dental, and financial records were searched, placed out of order, and misplaced, does not amount to an unreasonable search or seizure. Therefore, this Court grants the Kittson County Defendants' motion to dismiss the unreasonable-search-and-seizure claim in Count Two.

### c.       Right to Privacy in Medical Records

Plaintiff appears to assert a separate claim in Count Two that his constitutional right to privacy in his medical records was violated because the Kittson County Defendants accessed his medical records and kept them in an unsecured room at the jail. Compl. ¶ 148. Judge Erickson recommends dismissal of this claim based largely on Tokar v. Armontrout, 97 F.3d 1078, 1084 (8th Cir. 1996). In Tokar, the Eighth Circuit noted that as of 1996, neither the Supreme Court nor a federal court of appeals had held that prisoners have a constitutional right to confidentiality of their medical records. Id. (citing Anderson v. Romero, 72 F.3d 518, 523 (7th Cir. 1995)); see R&R at 21-24. Since Tokar was decided, at least two courts of appeals have held that prisoners have a limited right to privacy in their medical information. See Doe v. Delie, 257 F.3d 309, 315-16 (3d Cir. 2001); Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999) (holding that a prisoner's right to maintain confidentiality of previously undisclosed medical information may be impinged if prison officials' actions are "reasonably related to penological interests"). It appears that the Sixth Circuit does not recognize such a right. See Doe v. Wigginton, 21 F.3d 733, 740 (6th Cir. 1994) (holding that sergeant's disclosure of inmate's HIV infection did not violate the Constitution because "the Constitution does not encompass a general right to

nondisclosure of private information"). The issue appears to be undecided in other circuits. See, e.g., Simpson v. Joseph, No. 06-C-200, 2007 U.S. Dist. LEXIS 8226, at *34-35 (D. Wisc. Feb. 5, 2007) (noting that whether prisoners have privacy rights in their prison medical records is an open question in the Seventh Circuit).

Although the Eighth Circuit has yet to decide the issue, a recent unpublished decision from the Western District of Arkansas has recognized that prisoners have a limited constitutional right to privacy in their medical information. Richey v. Ferguson, Civ. No. 05-5162, 2007 WL 710129, at * 22 (W.D. Ark. Mar. 6, 2007). Assuming arguendo that such a right exists, the right is limited. The Supreme Court has held that a prison regulation can impinge an inmate's constitutional rights "if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). This Court finds that the same standard applies to pretrial detention.

The Kittson County Defendants have submitted the 2004 Kittson County Jail Policy, which provides that an inmate's "medical files will be available to all custody staff so that proper medical care can be ensured. All custody staff shall review an inmate's file at the beginning of each shift so that they are aware of any potential medical problems an inmate may have." Hill Aff. [Docket No. 29] Ex. A at 94. Requiring jail staff to be aware of an inmate's medical needs is a legitimate penological interest. Therefore, assuming arguendo that Plaintiff has a limited right to privacy in his medical information, Dalzell, Hultgren, and Porter's access to Plaintiff's medical records did not violate that right. The Kittson County Defendants are entitled to summary judgment on Plaintiff's claim that his right to privacy in his medical records was violated.

13

Plaintiff's claim that his medical records were kept in an unsecured room does not rise to the level of a Constitutional violation. Again, the Kittson County Individual Defendants' access to Plaintiff's medical records did not violate his right to privacy because the access was related to a legitimate penological interest. Plaintiff also alleges that other inmates used the unsecured room as a changing room. However, he does not allege that other inmates improperly accessed his records. The mere fact that other inmates used the unsecured room provides no basis for a claim that Plaintiff's right to privacy in his medical records was violated. The Kittson County Defendants are granted judgment on the pleadings on Plaintiff's claim that his right to privacy in his medical records was violated.

Finally, the Court finds that Plaintiff does not have a viable claim under the Minnesota Constitution and the Minnesota Government Data Practices Act, Minn. Stat. ch. 13, relating to the alleged seizure and improper storage of his medical, dental, and financial records.

### d.    Denial of Access to the Courts

In Count Three of the Complaint, Plaintiff asserts that the Kittson County Defendants violated his right of meaningful access to the courts. "The prisoner's right of access has been described as a consequence of the right to due process of law and as an aspect of equal protection." Murray v. Giarratano, 492 U.S. 1, 11 n.6 (1989). To prevail on a denial-of-access claim, Plaintiff must establish that the Kittson County Individual Defendants did "not provide[] an opportunity to litigate a claim . . . which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." White v. Kautzky, 494 F.3d 677, 680 (8th Cir. 2007). "[T]he underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."

14

Christopher v. Harbury, 536 U.S. 403, 416 (2002).  "[T]he predicate claim [must] be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."  Id.

Plaintiff alleges that the Kittson County Defendants seized (1) certain legal materials related to then-pending civil litigation that Plaintiff had initiated, and (2) Plaintiff's private correspondence with his civil and criminal attorneys.  Compl. ¶ 154.  Plaintiff asserts that the seizure of these materials prevented him from asserting a defense of discriminatory prosecution during his criminal trial.  Id. ¶ 162.  Plaintiff admits that the seized materials were returned in time for him to make a selective prosecution argument on appeal of his conviction.  Id.  The Minnesota Court of Appeals cursorily rejected Plaintiff's claim of selective prosecution.  Bailey, 2007 WL 1053011, at *4.

The R&R recommends that Plaintiff's denial-of-access claim survive the Kittson County Defendants' motion for judgment on the pleadings and for summary judgment.  R&R at 28.  In their Objections, the Kittson County Defendants argue the facts alleged in the Complaint are too vague to show that Plaintiff had a nonfrivolous and arguably meritorious claim for discriminatory prosecution.  Kittson & Pennington County Defs.' Objections at 4-6.  Although the Kittson County Defendants failed to make this specific argument before Judge Erickson, this Court has considered it and finds that Plaintiff's Complaint falls well short of the Supreme Court's pleading standard for claims of denial of access to the courts.

This Court infers from Plaintiff's Complaint that Plaintiff is claiming his prosecution for making terroristic threats was motivated by retaliation for civil matters Plaintiff had brought before several Minnesota state agencies.  Compl. ¶ 154.  A criminal defendant asserting a

15

defense of selective discriminatory prosecution bears a heavy burden in Minnesota.  A defendant

must establish:

> (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and

> (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, *i.e.*, based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of a constitutional right.

Minnesota v. Russell, 343 N.W.2d 36, 38 (Minn. 1984) (quoting United States v. Berrios, 501

F.2d 1207, 1211 (2d Cir. 1974)).  Again, to survive the Kittson County Defendants' Motion to

Dismiss, Plaintiff must "describe[] [his discriminatory prosecution claim] well enough to apply

the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more

than hope."  Christopher, 536 U.S. at 416.  Plaintiff's Complaint fails to meet this standard.

Plaintiff does not explain how the civil litigation documents and attorney correspondence would

help him satisfy the heavy burden necessary to show discriminatory prosecution.  Significantly,

the claim was raised before the Minnesota Court of Appeals which rejected Plaintiff's

discriminatory-prosecution argument without discussion.  Plaintiff has failed to allege facts

supporting a nonfrivolous and arguably meritorious claim of discriminatory prosecution.

Therefore, the Kittson County Defendants' objection is sustained and Plaintiff's claim of denial

of access to the courts in Count Three of the Complaint is dismissed.

### e.    Interference With Legal Mail

In Count Six of the Complaint, Plaintiff alleges that Dalzell and Porter violated the First,

Fourth, Sixth and Fourteenth Amendments by requiring Plaintiff to send his legal mail unsealed.

Compl. ¶¶ 164-69.  Plaintiff has also separately alleged that he overheard Dalzell reading his

16

outgoing legal mail.  Pl.'s Mot. for Default Judgment [Docket No. 42] at 36 n.118.  Plaintiff

alleges Hultgren ignored his complaints regarding the interference with his legal mail.  Compl. ¶

171.  The Kittson County Defendants object to Judge Erickson's conclusion that their motions to

dismiss and for summary judgment on Count Six should be denied.  R&R at 24-26.

        The Eighth Circuit has stated that "prison officials have a duty to maintain security

within the prison, and this may include reading inmates' incoming and outgoing mail, with the

exception of legal mail."  Thongvanh v. Thalacker, 17 F.3d 256, 258-59 (8th Cir. 1994).  At least

one other circuit has upheld a prison policy whereby (1) prison officials cursorily screen a

prisoner's outgoing legal mail for the limited purpose of determining that it is in fact legal mail,

and (2) the prison officials do so in the inmate's presence.  See, e.g. Bell-Bey v. Williams, 87

F.3d 832, 837-39 (6th Cir. 1996).

        The Kittson County Jail Policy states "[i]nmates will be instructed that all outgoing mail

of a personal nature is to be left unsealed so that it may be inspected by jail staff prior to its

delivery to the U.S. Postal Service" and that "[i]ncoming or outgoing mail between inmates and

their attorney . . . will not be read or censored by the staff."  Hill Aff. Ex. A at 59.  This policy is

silent about whether the inspection of outgoing mail is conducted in the presence of the inmate.

The Sixth Circuit has stated that if a prison's "policy called for the [legal] mail to be inspected

outside of the prisoner's presence, its validity might be called into serious question.  Bell-Bey, 87

F.3d at 837-39.  At this early stage of the litigation, Plaintiff has adequately stated a claim that

the Kittson County Jail Policy regarding screening of outgoing legal mail is unconstitutional, and

his official-capacity claims against the Kittson County Defendants survive their motions to

dismiss and for summary judgment.

Further, Plaintiff has adequately stated individual-capacity claims that the Kittson County Defendants read his legal mail.  The Kittson County Defendants' motion for summary judgment on these claims is denied because they have not submitted any affidavits refuting Plaintiff's allegations that Dalzell and Porter read his outgoing legal mail, and that Hultgren failed to respond when Plaintiff complained about such conduct.  The Kittson County Defendants have raised qualified immunity as a defense to Plaintiff's individual-capacity claims, but they do not address how qualified immunity shields them from Plaintiff's claim that they improperly read his legal mail.

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law."  Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994).  In Saucier v. Katz, 533 U.S. 194, 200-01 (2001), the Supreme Court clarified the standard courts must apply in conducting the qualified-immunity analysis.  The first question is whether, taken in the light most favorable to the plaintiff, the facts alleged show the government official's conduct violated a constitutional right.  Id. at 201.  The second question is whether the constitutional right at issue was clearly established.  Id.  As discussed above, Plaintiff has adequately alleged that the Kittson County Defendants violated a constitutional right by reading his outgoing legal mail outside of his presence.  Plaintiff's right to be free from this conduct was clearly established by 2004.  See Thongvanh, 17 F.3d at 258-59.  Accordingly, the Kittson County Defendants' objections to Judge Erickson's recommendation on  Count VI are overruled.

### f.      Denial of Access to the Jail Grievance Procedure

Count Four of the Complaint asserts that the Kittson County Defendants violated the

First Amendment by preventing Plaintiff from redressing his grievances.  Compl. ¶¶ 150-63.

Judge Erickson construed Count Four as a claim that Plaintiff was prevented from utilizing the

Kittson County Jail's grievance procedure.  R&R at 29.  Plaintiff alleges that Porter "threatened

physical violence, placement in an isolation cell and loss of privileges when Plaintiff complained

of the seizures of his documents."  Compl. ¶ 152.  This Court adopts Judge Erickson's

conclusion that these allegations are insufficient to state a § 1983 claim because "[g]enerally,

mere verbal threats made by a state-actor do not constitute a § 1983 claim."  Hopson v.

Fredericksen, 961 F.2d 1374, 1378 (8th Cir. 1992).  Plaintiff's allegations fall far short of the

kind of threatening conduct involving a "brutal" and "wanton act of cruelty" that the Eighth

Circuit has held is actionable under § 1983.  Id. at 1379.  Plaintiff's objection to dismissal of

Count Four is overruled and Count Four is dismissed.

### g.     Denial of Due Process

Plaintiff labels Count Five of his Complaint as "Fourteenth Amendment Denials of Due

Process."  Compl. at 39.  Plaintiff premises his due process claim on the seizure of his litigation

materials.  Compl. ¶¶ 150-63.  This Court adopts Judge Erickson's conclusion that Plaintiff's due

process claim fails because Plaintiff has not alleged that he was punished by any of the Kittson

County Defendants without notice and an opportunity to be heard.  R&R at 29-30.  The alleged

seizure of Plaintiff's legal papers does not amount to punishment.  The Kittson County

Defendants are granted judgment on the pleadings on Count Five of the Complaint.

### h.     Denial of Medical Treatment

In Counts Seven through Nine of the Complaint, Plaintiff asserts that the medical care

provided to him by the County Defendants was so inadequate that it violated his right to due

19

process under the Fourteenth Amendment of the United States Constitution.  Although Plaintiff

was a pretrial detainee when the Kittson County Defendants allegedly violated his constitutional

rights, under Eighth Circuit precedent Plaintiff's claim is analyzed by applying the same

standard as a convicted prisoner's claim.  The standard is whether the inadequate medical care

constitutes cruel and unusual punishment under the Eighth Amendment.  See Butler v. Fletcher,

465 F.3d 340, 345 (8th Cir. 2006).

To prevail on his claims against the Dalzell, Hultgren, and Porter in their individual

capacities, Plaintiff must show that they committed "acts or omissions sufficiently harmful to

evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106

(1976).  This standard includes both an objective and a subjective component: a plaintiff must

show both (1) that he suffered from objectively serious medical needs, and (2) that prison

officials actually knew of but deliberately disregarded those needs.  Jolly v. Knudsen, 205 F.3d

1094, 1096 (8th Cir. 2000) (citation omitted).  "A serious medical need is one that has been

diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson

would easily recognize the necessity for a doctor's attention."  Coleman v. Rahija, 114 F.3d 778,

784 (8th Cir. 1997).  "Deliberate indifference is akin to criminal recklessness."  Drake v. Koss,

445 F.3d 1038, 1042 (8th Cir. 2006).  "The prisoner must show more than negligence, more even

than gross negligence, and mere disagreement with treatment decisions does not rise to the level

of a constitutional violation."  Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

## I.      Treatment Related to Hepatitis C

In Count Seven of the Complaint, Plaintiff alleges that the Kittson County Defendants

were deliberately indifferent to his need for prescription treatment of Hepatitis C.  Compl. ¶¶

171-87.  The Kittson County Individual Defendants have submitted evidence regarding

Plaintiff's treatment.  The R&R extensively recited the record on this issue.  See R&R at 37-41.

In short, on August 17, 2004, Plaintiff received full-year prescriptions from the Altru Clinic in

Grand Forks, North Dakota, for pegylated Interferon, administered through injections, and

Rivavirin, administered through tablets, to treat his Hepatitis C.  Compl. Ex. D.  Plaintiff claims

he began taking both prescription drugs a week before his December 1, 2004, arrest.  Compl.

¶ 172-74.  Plaintiff alleges that the Kittson County Individual Defendants refused to allow him to

take the pegylated Interferon, putting his health in jeopardy.  Compl. ¶ 175.

    The Kittson County Defendants argue that jail records refute Plaintiff's allegations that

they were deliberately indifferent to Plaintiff's medical needs.  Plaintiff's December 2, 2004,

Kittson County Jail booking sheet reflected that Plaintiff was taking medication for Hepatitis C.

Hill Aff. Ex. C.  According to Dalzell's notes, that same day Loretta Hillier ("Hillier"),

Plaintiff's attorney in his criminal matter, instructed Dalzell by phone that Plaintiff lied about

starting his medications "and that he needs to have blood work etc. done in Grand Forks before

he can take the medications."  Hill Aff. Ex. H.  Hillier stated that "this is not a time for [Plaintiff]

to start taking the medications until he is out of jail."  Id.  On December 14, 2004, Hillier faxed

Dalzell a December 10 note from the Ultra Clinic stating that Plaintiff should be allowed to take

his medications.  Id. Ex. I.  However, on December 20, Hillier left a message stating that

"[Plaintiff's] doctor has changed his mind and wants to see [Plaintiff] before treatment is started.

. . .  Plaintiff's doctor appointment is scheduled for January 12 at 11 a.m. at Ultra in Grand

Forks."  Ex. J.

    On December 29, 2004, Plaintiff was transferred to the psychiatric unit of NWMC, and

he was released to jail custody the next day.  Hill Aff. Ex. C.  It appears that Plaintiff was in the

custody of either the Pennington County Jail or the Marshall County Jail from December 30 to

February 16.  There is no evidence regarding whether Plaintiff attended his scheduled January 12

appointment at the Ultra Clinic.  Plaintiff returned to Kittson County Jail on February 16, 2005.

Id. Ex. E.  On his February 16 booking sheet, which Plaintiff signed, Plaintiff stated that he had

Hepatitis C but he did not state whether he was taking any medication.  Id. Ex. E.

On February 18, 2005, Plaintiff was transported to Kittson Memorial Healthcare Center

("KMHC") for treatment of swollen feet, varicose veins, and sores and blood in his nose.  Hill

Aff. Ex. K.  During the appointment, Plaintiff became dissatisfied with the treating physician and

requested an appointment with a different doctor.  Id.  Accordingly, on March 4, Plaintiff was

again transported to the KMHC, where a different physician assessed Plaintiff's swelling and

nasal issues and prescribed a nasal steroid spray and compression socks to reduce the swelling in

his feet.  Id. Ex. M.  The medical report shows that blood tests related to Plaintiff's Hepatitis C

reflected that Plaintiff's liver enzymes were stable.  Id.  The medical report does not reflect any

discussion regarding prescription medications for Plaintiff's Hepatitis C.  Id.  Kittson County Jail

records show that Plaintiff took regular doses of the prescribed nasal spray from March 4, 2005,

until he was transferred to the custody of the Marshall County Jail on April 20, 2005.  Hill Aff.

Ex. N.

The Kittson County Defendants argue that "[i]n light of the confusion surrounding the

Plaintiff's Hepatitis C treatment and the actions of the Kittson County Defendants, it cannot

legitimately be argued that they exhibited a 'deliberate disregard' for a 'substantial risk of

serious' harm" to Plaintiff.  Kittson County Defs.' Objections at 11-12.  However, this Court

agrees with Judge Erickson that the Kittson County Defendants are not entitled to summary judgment on the present record.  The records submitted by the Kittson County Defendants supports the existence of uncertainty in December 2004 regarding whether Plaintiff's Hepatitis C treatment should begin.  Plaintiff may have failed to remind the staff at the Kittson County Jail that he desired to begin his prescribed Hepatitis medication when he was rebooked in February 2005.  However, neither Dalzell, nor Hultgren, nor Porter has submitted an affidavit refuting Plaintiff's allegation that they denied his request for his medications, and Plaintiff has submitted a February 22, 2005, Waiver of Extradition that he claims shows that he took the necessary steps to allow the Kittson County Defendants to transport him to and from the Ultra Clinic in Grand Forks, North Dakota.  Compl. Ex. A.  There is a genuine issue of material fact as to whether the Kittson County Individual Defendants were deliberately indifferent to Plaintiff's need for Hepatitis medications.  Further, the Court finds that the Kittson County Defendants are not entitled to qualified immunity on the present record.

### ii.      Treatment Related to Plaintiff's Need for New Eyeglasses

In Count Eight of the Complaint, Plaintiff asserts that the Kittson County Defendants were deliberately indifferent to his need for replacement eyeglasses.  Compl. ¶¶ 171(a), 177-78.  Plaintiff alleges that Hultgren, Porter, and Dalzell "denied eyeglasses and a previously scheduled appointment to obtain them . . . Plaintiff has been forced to wear pitted and scratched glasses in order to see, ever since, as [a] consequence, damaging his eyesight, the Plaintiff suffered and suffers from serious and painful headaches . . . ."  Id. ¶ 171(a).  Plaintiff has submitted an appointment slip for an eye examination scheduled for December 8, presumably in 2004.  Compl. Ex. B.  Plaintiff was booked at the Kittson County Jail on December 2, 2004.  Plaintiff

alleges Hultgren, Porter, and Dalzell viewed his appointment slip.  Compl. ¶ 177.

Judge Erickson found that Plaintiff's allegations relating to the denial of medical treatment for his vision adequately states a § 1983 claim, and that this claim survives the Kittson County Defendants' alternative summary judgment motion.  R&R at 32-35.  In their Objections, the Kittson County Defendants argue that Plaintiff cannot satisfy either element of a deliberate-indifference claim.  After reviewing the record, this Court sustains the Kittson County Defendants' objection.  Plaintiff's optometrist appointment slip did not put the Kittson County Defendants on notice that the appointment related to a previously diagnosed medical condition that required immediate treatment, as opposed to a routine eye examination.  It would not have been obvious to a layperson that the scratched eyeglasses caused Plaintiff to suffer headaches and visual impairment.  Plaintiff has not alleged that he complained of his symptoms.  Therefore, Plaintiff has failed to adequately allege that his vision impairment was an objectively serious medical need.  Similarly, Plaintiff has failed to allege any facts supporting his assertion that the Kittson County Defendants knew of but were deliberately indifferent to his vision problems. The Kittson County Defendants' objection on Count Eight is sustained and Count Eight is dismissed.

### iii.    Treatment Related to Plaintiff's Dental Needs

In Count Nine of his Complaint, Plaintiff alleges the Kittson County Individual Defendants refused to allow him to attend a previously scheduled December 2, 2004, visit to a dentist to obtain dentures.  Plaintiff was arrested December 1.  As result of missing the appointment, Plaintiff alleges he suffered burns, abrasions, and lacerations when he tried to eat without any teeth.  Compl. ¶ 171(d).  Plaintiff further alleges he suffered damage to his digestive

tract due to his inability to properly chew food.  Id.  In response, the Kittson County Defendants argue there is no evidence that the staff at the Kittson County Jail were aware of Plaintiff's dental appointment.  Kittson County Defs.' Objections at 10.  They further argue that Plaintiff's only complaint regarding his dental condition was that he needed his breakfast waffles softened in the microwave.  Hill Aff. Ex. O.

Unlike Plaintiff's visual impairment, Plaintiff's lack of teeth and need for dentures may qualify as an objectively serious medical need that would have been obvious to a layperson.  The Kittson County Defendants have not submitted any affidavits of Dalzell, Hultgren, or Porter regarding their knowledge of Plaintiff's dental condition.  R&R at 35-37.  Similarly, the Kittson County Defendants have not submitted any affidavits to support their assertion that Plaintiff's only dental-related request was that his waffles be softened.  The Kittson County Defendants have failed to refute Plaintiff's allegations that they were deliberately indifferent to Plaintiff's suffering caused by his lack of teeth.  At this stage of the litigation, there is a genuine issue of material fact whether Plaintiff had an objectively serious dental need and whether the Kittson County Individual Defendants were deliberately indifferent to that need.  Further, the scant evidence in the current record does not conclusively demonstrate that the Kittson County Individual Defendants are entitled to qualified immunity.

### iv.    Official-Capacity Claims

Although Plaintiff's individual-capacity claims of deliberate indifference to his medical needs survive at this juncture, he has failed to allege any facts that would support the existence of a policy or custom at the Kittson County Jail of denying inmates access to medical treatment. The evidence in the record demonstrates the opposite, as Plaintiff received prompt treatment for

his nasal and feet conditions.  Although Plaintiff has adequately alleged isolated instances of

deliberate indifference to his medical needs, this Court finds that the allegations in the Complaint

do not sufficiently state a policy or custom that was the moving force behind the constitutional

violations.  In the alternative, the Court finds that the Kittson County Jail Policy provisions

regarding medical treatment, and the fact that Plaintiff was promptly treated for his nasal and

feet conditions, conclusively refute the existence of a policy or custom of denying medical care

to inmates.  Hill Aff. Ex. A at 89-105.

> **3.      Claims Arising from the Events of December 29, 2004**
>
> **a.      First Amendment Reprisal**

In Counts Eleven and Fourteen, Plaintiff alleges that the Kittson County Defendants

retaliated against him for engaging in free speech critical of Porter by transferring Plaintiff to the

NWMC on December 29, 2004.  Compl. ¶¶ 199-273, page 73.  Plaintiff alleges that Porter

deliberately provoked him to anger, and then provided false information on the Application for

Emergency Hospitalization.  Judge Erickson rejected this claim on the basis that Plaintiff was

not engaged in protected speech.  R&R at 46-50.  This Court agrees.

Although pretrial detainees do not forfeit all constitutional protections at the jailhouse

door, "[m]aintaining institutional security and preserving internal order and discipline are

essential goals that may require limitation or retraction of the retained constitutional rights of

both convicted prisoners and pretrial detainees."  Bell v. Wolfish, 441 U.S. at 546.  Accordingly,

a jail regulation restricting First Amendment rights need only be "reasonably related to a

legitimate penological interest."  Hamilton v. Schriro, 74 F.3d 1545, 1560 (8th Cir. 1996).  The

Kittson County Jail Policy states that "[n]o prisoner shall express profanity or obscenity directed

at another nor make disrespectful remarks against the character of another person, insult or direct insults to another person" and "[n]o prisoner shall create a disturbance by yelling, banging utensils, using obscenities or in any other manner create loud disturbing noises."  Hill Aff. Ex. A at 46.

Plaintiff concedes that he was yelling, gesturing wildly, and using obscenities, which are prohibited behaviors under the jail rules.  The rules are reasonably related to the penological interest of maintaining order in the Kittson County Jail. Accordingly, this Court adopts Judge Erickson's conclusion that Plaintiff was not engaged in protected speech on December 29, 2004, when he yelled, swore, and gestured wildly at the Kittson County Jail.  The Kittson County Defendants are entitled to summary judgment on Counts Eleven and Fourteen of the Complaint.

### b.    Procedural Due Process

In Count Thirteen, Plaintiff alleges the Kittson County Defendants violated his right to procedural due process when they transferred him to the NWMC without a judicial hearing.  The Kittson County Defendants transferred Plaintiff pursuant to Minn. Stat. 253B.05, subd. 2, which allows peace officers to transport a person to a treatment facility "if the officer has reason to believe . . . that the person is mentally ill . . . and in danger of injuring self or others if not immediately detained."  The statute provides that a person transported to a treatment facility may be admitted to the facility only if appropriate medical personnel perform a preliminary examination and determine that the person appears to be in danger of harming himself or others.  Minn. Stat. § 253B.05, subd. 2(c).  A person subject to an involuntary emergency admission must be informed in writing at the time of admission of certain rights, such as the right to leave after seventy-two hours.  Minn. Stat. § 253B.05, subd. 2b.  A court order is necessary to hold a

27

person longer than seventy-hours.  Minn. Stat. § 253B.05, subd. 3(e).

Although Minnesota has set its own standards, the minium procedural requirements of

due process under the federal Constitution are a matter of federal law.  Vitek v. Jones, 445 U.S.

480, 491 (1980).  Involuntary commitment implicates a liberty interest protected by the due

process clause.  Id. at 491-2.  The Supreme Court has held that a judicial hearing prior to

emergency involuntary commitment is not a requirement of due process.  Washington v. Harper,

494 U.S. 210, 231 (1990) (holding that "that an inmate's interests are adequately protected, and

perhaps better served, by allowing the decision to medicate to be made by medical professionals

rather than a judge").  Further, lower courts have held that a preliminary hearing is not required

for an emergency involuntary commitment.  See, e.g. Doby v. DeCrescenzo, 171 F.3d 858, 870

(3d Cir. 1999) (noting that "it may be reasonable . . . for a state to omit a provision for notice and

a hearing in a statute created to deal with emergencies, particularly where the deprivation at

issue . . . continues only for a short period of time"); Project Release v. Prevost, 722 F.2d 960,

974 (2d Cir. 1983) (holding that due process does not require preliminary hearing).  To the

extent Plaintiff's due process claim is premised on the argument that the lack of a judicial

hearing is a *per se* violation of the due process clause, his claim must be dismissed.

The R&R recommends that the Kittson County Defendants' motion for dismissal and

for summary judgment be denied because a genuine issue of material fact exists regarding the

reasonableness of Porter's determination that Plaintiff was a danger to himself or others.  R&R at

50-52.  However, Porter's determination was subsequently corroborated by NWMC staff.  Nurse

Weinen recorded that Plaintiff was "verbally abusive to staff."  Compl. Ex. K.  Clinical

psychologist Ellie Wiemerslage observed that even after Plaintiff was medicated, "[h]e made

28

many different attempts to manipulate staff, from attempting to elicit sympathy, to threats to bit[e], scratch, and/or spit on staff to communicate the hepatitis virus, to being ingratiating. When these were ineffective, [Plaintiff] became hostile and irritable.  He urinated on the floor of his room."  Compl. Ex. J.  Wiemerslage concluded that "[t]his hospitalization is needed to ensure his safety and that of those in his immediate environment as he was behaviorally out of control and threatening law enforcement and other inmates."  Id.  Porter, Dale Hanson, and others recorded similar observations.  Compl. Exs. E-G.

Although Plaintiff avers that the law enforcement officers and NWMC staff were lying or exaggerating about his behavior, he concedes that he was yelling, swearing, and hollering at the Kittson County Jail, and that he threatened to bite others at NWMC.  Compl. ¶ 305.  On this record, there is no genuine issue of material fact as to the reasonableness of Porter's determination that Plaintiff appeared to be a threat to himself and others.  The Kittson County Defendants are granted summary judgment on Count Thirteen.

### c.      Right to Counsel

In Count Twelve of the Complaint, Plaintiff asserts that he had a right to counsel before he was involuntarily hospitalized at the NWMC on December 29, 2004.  Plaintiff contends that the Kittson County Defendants and Dale Hanson wrongfully prevented him from calling his attorney.  This Court is aware of no precedent that a prisoner or a pretrial detainee has a right to counsel before an emergency involuntary commitment.  The Court adopts Judge Erickson's conclusion that Plaintiff did not have a right to contact his counsel before he was hospitalized at NWMC.  Even if Plaintiff had such a right, the contours of that right were not clearly established by December 2004.  Therefore, in the alternative, the Kittson County Defendants and Dale

Hanson are entitled to qualified immunity on Plaintiff's right-to-counsel claim.

        **d.**      **Excessive Force**

        **I.**      **Use of Excessive Force in Tasering Plaintiff**

In Count Ten, Plaintiff alleges Van Schaick used unreasonable force when he shocked Plaintiff with a taser. A pretrial detainee's excessive force claim is

> analyzed under the due process clause of the Fifth and Fourteenth Amendments rather than the Eighth Amendment's "cruel and unusual punishment clause" standard which is used for convicted prisoners. The injuries detainees suffer must be necessarily incident to administrative interests in safety, security and efficiency. Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose or those that are rationally related but are excessive in light of their purpose.

Johnson-El v. Schomehl, 878 F.2d 1043, 1048 (8th Cir. 1989). The Fourth Amendment's objective reasonableness standard applies: "The question for the [fact finder] is whether, judging from the perspective of a reasonable officer at the scene . . . , the totality of the circumstances justifies the use of the force used." Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1081 (8th Cir. 1990).

Plaintiff was held without restraints in a secure room at the NWMC. When NWMC staff asked him to change his clothes, Plaintiff swore, yelled, threw his glasses case across the floor, and sat on a mattress on the floor with his back against the wall. He refused to take the medication offered by the NWMC staff, and stated he had Hepatitis C and would bite or spit at anyone who approached him to administer. Van Schaick ordered Plaintiff to roll over onto his stomach or he would be tasered. Plaintiff refused, stating "Fuck you, you will kill me." At that point Van Schaick shocked Plaintiff with the taser and the other officers physically restrained Plaintiff so that he could be injected with a neuroleptic medication.

The R&R concluded that a reasonable police officer might have determined that some use of force was appropriate, but that there is a genuine issue of material fact as to whether the use of the taser was objectively reasonable.  R&R at 57.  This Court agrees.  There is little evidence in the record regarding the reasonableness of using a taser in the situation the officers confronted.  Van Schaick's objection regarding Plaintiff's excessive-force claim is overruled, and the objections of the other officers regarding Plaintiff's derivative failure-to-intervene claims are also overruled.

The Court also finds that the Plaintiff's official-capacity claims arising out of the use of the taser also survive summary judgment.  There is little evidence in the record regarding any of the defendant government entities' policies' regarding the use of tasers.

### ii.    Use of Excessive Force in Physically Restraining Plaintiff

Plaintiff also claims that City of Thief River Falls police officers Gerald Hanson, Lindgren, and Kezar used excessive force when they physically restrained Plaintiff after Van Schaick tasered him.  Comp. ¶¶ 73-89.  Plaintiff claims the cartilage in his nose was damaged as a result.  Id.  The R&R recommends that City Defendants' Motion to Dismiss be denied as to Plaintiff's individual-capacity claims.  This Court agrees.  Plaintiff has adequately stated an excessive force claim arising out of the Thief River Falls police officers taking him to the ground.

Plaintiff has further alleged that the City of Thief River Falls is liable for negligently training and retaining Gerald Hanson, Lindgren, and Kezar.  Compl. ¶¶ 49, 69-70.  Judge Erickson recommends that these claims be dismissed because Plaintiff has failed to adequately allege negligent training.  R&R at 73-74.  This Court agrees.  Plaintiff has not alleged any facts

31

to support his claim that the City of Thief River Falls had a policy, custom, or improper training that was the "moving force" behind the officers' alleged use of excessive force when they physically restrained Plaintiff.

   **e.**  **Claims Against the Medical Defendants**

  In Count Fifteen, Plaintiff asserts a § 1983 claim that the Medical Defendants violated his civil rights when they admitted him to the NWMC, allowed him to be shot with a taser, and administered neuroleptic medications without a court order or Plaintiff's consent. Judge Erickson recommends that the Medical Defendants' Motion for Summary Judgment be granted as to this claim because the record conclusively demonstrates that the Medical Defendants did not qualify as state actors. This Court agrees for the reasons stated in the R&R. See R&R at 63-69.

   **4.**  **State Law Claims**

  Judge Erickson recommends dismissal of Plaintiff's false-imprisonment claim as untimely. R&R at 74-75. Plaintiff avers he was falsely imprisoned when he was involuntarily hospitalized at NWMC from December 29 to December 30, 2004. In Minnesota, the statute of limitations for intentional torts is two years. Minn. Stat. § 541.07(1). This Court adopts Judge Erickson's conclusion that Plaintiff's claim, which was filed on April 30, 2007, was untimely. In his Objections, Plaintiff asserts that the statute of limitations must be equitably tolled from December 1, 2004, through June 1, 2007, because he was held as a pretrial detainee in the Kittson, Pennington, or Marshall County Jails, or as a prisoner in the custody of the Minnesota Department of Corrections during that time period. Objections [Docket No. 66] at 85-86. Plaintiff also avers his supervised-release conditions prevented him from bringing his false-

imprisonment claim.  Id.  However, civil complaints from Minnesota prisoners and pretrial

detainees are filed with great frequency.  The mere fact that Plaintiff was in custody does not toll

the statute of limitations.

Plaintiff also claims that Minnesota Department of Corrections prison authorities

threatened him when he attempted to work on this lawsuit.  Pl.'s Mot. for Default Judgment

[Docket No. 42] at 61-62.  However, Plaintiff has not specified what the alleged threats were.

Further, Plaintiff claims that the Department of Corrections' policy prevented him from working

on lawsuits not directly related to his criminal case or his conditions of confinement at the

prison.  However, Plaintiff has submitted a prison library newsletter stating that "[w]e do allow

offenders to look through law library materials if they are working on personal issues, but we do

not provide them any free copies, etc. for anything other than criminal appeals or matters

concerning conditions of incarceration."  Pl.'s Objections [Docket No. 66] Attachs at 2.  Plaintiff

is not entitled to equitable tolling.  Accordingly, his false imprisonment claim is dismissed as

untimely.

**C.      Other Motions**

For the reasons stated in the R&R, this Court denies of Plaintiff's Motions for Default

Judgment, or Alternatively for Summary Judgment [Docket Nos. 42 and 44], Motion for Mistrial

and for Sanctions [Docket No. 43], and Motion for Appointment of Counsel [Docket No. 44].

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff Michael J. Bailey's Objections [Docket Nos. 66 and 67] to Judge Raymond L. Erickson's Report and Recommendation [Docket No. 60] are **OVERRULED IN PART AND SUSTAINED IN PART**.

2.   The Kittson and Pennington County Defendants' Objections [Docket No. 65] are **OVERRULED IN PART AND SUSTAINED IN PART**.

3.  Northwest Medical Center, Marlene Beedy, Sharon Benson, Mary McEnelly, Kathy Mercil, Amanda Peters, Timothy Rittenour, Nichole Weinen, Ellie Wiemerslage, and Unknown Records Department Personnel's Motion to Dismiss and Alternatively [for] Summary Judgment [Docket No. 17] is **GRANTED**;

4.  The City of Hallock, Dale Hanson, the City of Thief River Falls, the City of Thief River Falls Chief of Police Gerald Hanson, Charles Lindgren, and Ryan Kezar's Motion to Dismiss [Docket No. 22] is **GRANTED IN PART AND DENIED IN PART**;

5.  Kittson County, Kenny Hultgren, LoAnn Dalzell, Steve Porter, Pennington County, Michael Hruby, and James Van Schaick's Motion to Dismiss, or in the Alternative for Summary Judgment [Docket No. 26] is **GRANTED IN PART AND DENIED IN PART**;

6.  Plaintiff's Motions for Default Judgment or Alternatively for Summary Judgment [Docket Nos. 42 and 44] are **DENIED**;

34

7.      Plaintiff's Motion for Mistrial and for Sanctions [Docket No. 43] is **DENIED**;

8.      Plaintiff's Motion for Appointment of Counsel [Docket No. 44] is **DENIED**; and

9.      Counts One, Two, Three, Four, Five, Eight, Eleven, Twelve, Thirteen, Fourteen,

and Fifteen of the Complaint [Docket No. 1] are **DISMISSED**.

BY THE COURT:


_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  March 31, 2008.